Earl E. SMITH *v.* STATE of Arkansas

CR 95-241                                            906 S.W.2d 302

Supreme Court of Arkansas
Opinion delivered September 25, 1995

*Wallace, Hamner, & Adams*, by: *Dale E. Adams*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Pamela Rumpz*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant was charged with capital murder after he confessed to killing Tommie Wilbarger. He moved to suppress his confession, but the trial court denied the motion. The State subsequently agreed to reduce the charge to first degree murder upon appellant's conditional plea of guilty. Appellant entered a conditional plea of guilty to first degree murder, and the trial court sentenced him to life imprisonment. He appeals from the trial court's denial of his motion to suppress. *See* A.R.Cr.P. Rule 24.3(b). We affirm the trial court's ruling.

The facts surrounding the confession are as follows. At

2:40 p.m. on February 21, 1994, Tommie Wilbarger, an employee of the Little Rock School District, was reported missing from the school where she worked. Her family gave appellant's name to the Little Rock police as a person who might have some information about her disappearance. Ms. Wilbarger and appellant had lived together in the past.

In his first statement to the police, appellant stated that Tommie Wilbarger's sister called his mother's home in Fordyce on the morning of the 22nd and told him that Ms. Wilbarger was missing. He said that he immediately called the Little Rock Police Department from his mother's house and spoke with Detective Leslie. The record is not clear as to whether a policeman asked Ms. Wilbarger's sister, or anyone else, to have appellant call the police department. However, there was substantial evidence from which the trial court could find that appellant was in Fordyce and called the Little Rock Police Department of his own volition. The police so testified, and, in appellant's first statement, the following question and answer appear:

> Det. Oberle: Did you call down here to the police department this morning?
>
> Appellant: Yeah. Soon as, she gave me the number, my sister gave me the number, I called right then.

Detective Joe Leslie testified that at 7:00 a.m. on February 22, or the morning after the missing person report was received, appellant called the police department and said that he understood that some detectives were looking for him to ask about Tommie Wilbarger's disappearance. Detective Leslie was not aware of the missing person report. He looked in the police files and found a report stating that Tommie Wilbarger was missing and her family thought that appellant might be involved in some way. After reading the written report, Detective Leslie asked appellant to come to the Little Rock Police Department and talk with the detectives assigned to the case since they were trying to get some information on Ms. Wilbarger's disappearance. In his first statement, appellant said that after calling the Little Rock Police Department he drove from Fordyce to Little Rock and went to the police station. Detective Joe Oberle, who was assigned to the missing person case on the morning of the 22nd, testified that appellant arrived at 11:45 that morning. Detective Oberle testified that he was not

in the station when appellant arrived, but he returned to the station immediately after being informed that appellant was there. Detective Oberle and Detective Nicholas, the other detective assigned to the missing person case, interviewed appellant in Sergeant Steelman's office. Entrance from the street into Sgt. Steelman's office is controlled by an electronic device that must be activated before entry, but to leave one only has to push a button and the doors open. Appellant was never taken to one of the interrogation rooms back in the police department.

Detectives Oberle and Nicholas testified that they did not know a crime had been committed when appellant came in to talk to them, and obviously they did not consider appellant to be a suspect in a murder. Neither detective told appellant that he was there voluntarily or that he was free to leave. Detective Oberle testified that appellant phoned the police station from Fordyce and said he would drive to Little Rock to talk about his missing ex-girlfriend, and there did not seem to be any reason to stop the conversation and say, "By the way, Earl, you know you have the right to leave." The detectives stated that appellant was free to leave at any time.

Starting at 12:09 a.m. and concluding at 12:39 a.m., appellant gave a detailed exculpatory statement in which he said that Ms. Wilbarger was with him in his car on the morning of the 21st, he took her back to the school, and that was the last he had seen of her. The detectives asked appellant if he had driven the same car to the police department. He answered affirmatively. The detectives asked if they could search the car. Appellant again answered affirmatively and signed a consent-to-search form.

The detectives testified that they smelled a strong odor of soap or cleaning fluid emanating from the car and they saw blood splattered on the door. They found an empty holster under one car seat and a hole in the passenger seat with an object imbedded in it, which they thought was a projectile from a bullet. They discovered blood on the passenger seat. The detectives testified that at that point they concluded that a homicide likely had been committed and appellant was the primary suspect.

The detectives testified that after searching the car they returned to the station and informed appellant of his Miranda rights. Appellant, who had a twelfth-grade education and was about forty

years old, stated that he understood his rights and signed a waiver of rights form at 1:10 p.m. that same day. After appellant executed the form, the detectives took a second taped statement.

In the second statement, appellant said that he had driven from Fordyce to Little Rock to tell them that he had killed Ms. Wilbarger and they could search his car and find the evidence, but "it took a while." That part of the statement is as follows:

> Appellant: Well, the reason I came up to Little Rock today, I, I knew I was going to tell you what happened. But it just took a while. That's why I gave you the consent to go and look in the car, 'cause I wanted you to find for yourself.

> Det. Oberle: You wanted to tell me you killed her?

> Appellant: Yeah, but I wanted you to, that's why I gave you the consent, that's why I drove the car up here.

At the end of the taped statement, appellant said:

> Appellant: Yeah. I just didn't know how to go about it. I wanted to tell y'all exactly the truth. Just didn't know how to go about it.

> Oberle: Okay.

> Appellant: I want to help any way I can.

Appellant told the detectives where the gun was located and where he had disposed of the body.

■ Appellant's argument is that he was "seized" without probable cause, and the subsequent consent to search and confession were fruits of the illegal seizure. On appeal from a trial court's ruling on a motion to suppress evidence, this court makes an independent determination based on the totality of the circumstances and reverses only if the trial court's ruling was clearly against the preponderance of the evidence. *Hudson* v. *State*, 316 Ark. 360, 364, 872 S.W.2d 68, 71 (1994).

In the first part of his argument appellant contends that he was illegally seized under the provisions of A.R.Cr.P. Rules 2.2 and 2.3. Rule 2.2 provides that a law enforcement officer may request a person to give him information and cooperate in an investigation,

but the law enforcement officer cannot indicate to the person that he must comply with the request. Rule 2.3 provides:

> If a law enforcement officer acting pursuant to this rule requests any person to come to or remain at a police station, prosecuting attorney's office or other similar place, he shall take such steps as are reasonable to make clear that there is no legal obligation to comply with such a request.

Appellant argues that Detective Leslie was acting under the authority of A.R.Cr.P. Rule 2.2 when he asked him to come to the Little Rock Police Department and give information, and that Detectives Oberle and Nicholas were acting under the authority of the same rule when they questioned him. He then contends that each detective admitted he did not inform appellant he was there on a voluntary basis or that he was free to go; consequently, they violated Rule 2.3, and there was an illegal seizure of appellant. *See Hart* v. *State*, 312 Ark. 600, 852 S.W.2d 312 (1993). The argument is without merit.

■ There was substantial testimony from which the trial court could have found that appellant did not go to the Little Rock Police Department as a result of a request by a member of that department, but rather that he went there on his own volition, or at the request of his sister. Thus, there was substantial evidence that the interview did not come within the ambit of Rules 2.2 and 2.3 and there was no illegal seizure of appellant under the applicable Arkansas Rules of Criminal Procedure.

■ Appellant additionally contends that he was seized within the meaning of the Fourth Amendment. In *United States* v. *Mendenhall*, 446 U.S. 544, *reh'g denied*, 448 U.S. 908 (1980), the Supreme Court set forth guidelines for determining whether a person has been seized:

> We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the

> display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Id.* at 554 (citations omitted). In *Mendenhall*, the defendant was stopped in an airport by two federal agents and asked to show them her identification and ticket. After returning the identification and ticket, the agents asked the defendant if she would go with them to their office. The defendant consented. The Court held that neither the questioning on the concourse nor the request to accompany the agents to the office and the ensuing questioning constituted a seizure. As to the interlude on the concourse, the Court stated:

> In short, nothing in the record suggests that the respondent had any objective reason to believe that she was not free to end the conversation in the concourse and proceed on her way, and for that reason we conclude that the agents' initial approach to her was not a seizure.

> Our conclusion that no seizure occurred is not affected by the fact that the respondent was not expressly told by the agents that she was free to decline to cooperate with their inquiry, for the voluntariness of her responses does not depend upon her having been so informed.

*Id.* at 555 (citation omitted).

In holding that the request to go to the office was not a seizure, the Court stated:

> The District Court specifically found that the respondent accompanied the agents to the office "'voluntarily in a spirit of apparent cooperation.'" Notwithstanding this determination by the trial court, the Court of Appeals evidently concluded that the agents' request that the respondent accompany them converted the situation into an arrest requiring probable cause in order to be found lawful. But because the trial court's finding was sustained by the record, the Court of Appeals was mistaken in substituting for that finding its view of the evidence.

> The question whether the respondent's consent to

> accompany the agents was in fact voluntary or was the product of duress or coercion, express or implied, is to be determined by the totality of the circumstances, and is a matter which the Government has the burden of proving.

*Id.* at 557 (citations omitted). *See also Dees* v. *State*, 30 Ark. App. 124, 783 S.W.2d 372 (1990), in which the court of appeals held that the defendant voluntarily accompanied the officers to the police station to make a statement as a witness, not a suspect, even though she was not told that she did not have to go.

▪ In the case before us, there was no threat in a request for appellant to come to the police station. There was no evidence that either detective displayed weapons after appellant arrived at the station. There was no evidence of a physical touching, language, or a tone of voice, indicating that appellant was compelled to be there. Appellant was never taken to an interrogation room. The detectives did not even know that a crime had been committed when they interviewed him. There was no meaningful delay between the time of the interview, the consent to search, and the confession. Thus, there was substantial evidence from which the trial court could have found that appellant was acting "voluntarily in a spirit of apparent cooperation." *Mendenhall*, 446 U.S. at 557. The trial court correctly ruled that appellant was not seized under either the Arkansas Rules of Criminal Procedure or the Fourth Amendment. Because of this holding, we need not reach appellant's other arguments.

The sentence in this case is life imprisonment. Consequently, we would ordinarily examine the record to determine whether there were other rulings adverse to appellant which constituted prejudicial error. Ark. Sup. Ct. R. 4-3(h). However, in this case there was a conditional plea of guilty, and upon an appeal from such a plea we review only the adverse determination of the pretrial motion to suppress evidence. A.R.Cr.P. Rule 24.3(b). We have held that the new sentencing procedures have created another exception, but that exception is not applicable to this case. *See Hill* v. *State*, 318 Ark. 408, 887 S.W.2d 275 (1994).

Affirmed.