104 Ark.App. 253

**Roger BEDSOLE, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–376.**

Court of Appeals of Arkansas.

Jan. 7, 2009.

Morris W. Thompson and Terrence Cain, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Deborah Nolan Gore, Ass't Att'y Gen., for appellee.

## D.P. MARSHALL JR., Judge.

The issue presented is whether a reasonable person in Roger Bedsole's position would have felt free to ignore State Trooper Condley's post-traffic-stop questions and proceed on his way. Bedsole was traveling east on I-40 in Pope County when Condley noticed Bedsole's car cross the fog line onto the shoulder. Condley initiated a traffic stop. Bedsole pulled over and got out of his car to talk to Condley. Bedsole provided his driver's license, the rental agreement for his car, and answered Condley's questions. Condley issued Bedsole a warning. The video tape of the stop reveals that, right after receiving the warning, Bedsole began to turn toward his vehicle. At that instant, Condley said "[l]et me ask you a question." The Trooper asked whether Bedsole had any drugs or weapons in his car. Bedsole said that he did not. Condley then asked to search the car. And Bedsole agreed.

Condley's search revealed approximately two pounds of methamphetamine. The State charged Bedsole with possession of a controlled substance with intent to deliver and simultaneous possession of drugs and firearms. The State nolle prossed the latter charge. Bedsole moved to suppress the items seized and his statements made during the search. After a hearing, the circuit court denied his motion. Bedsole then entered a conditional guilty plea, reserving his right under Ark. R.Crim. P. 24.3(b) to appeal the denial of his motion to suppress. He now appeals.

■ We review the circuit court's denial of Bedsole's motion to suppress *de novo*, looking at the totality of the circumstances, reviewing the court's findings of fact for clear error, and giving due weight to inferences drawn by the court. *Bum-*

*gardner v. State*, 98 Ark.App. 156, 158–59, 253 S.W.3d 1, 3 (2007). We note two important points at the threshold. First, Trooper Condley's initial traffic stop of Bedsole's car was lawful-Condley witnessed the car cross the fog line. *Sims v. State*, 356 Ark. 507, 512, 157 S.W.3d 530, 533 (2004). Second, the State concedes that Condley did not have reasonable suspicion, under Arkansas Rule of Criminal Procedure 3.1, to continue detaining Bedsole after issuing the warning and completing the traffic stop.

■ The case thus turns on whether Condley's post-warning questioning of Bedsole was a consensual police-citizen encounter or an illegal detention. We agree with the State that not every police-citizen encounter is a seizure. *Dowty v. State*, 363 Ark. 1, 10, 210 S.W.3d 850, 855 (2005). The critical question, though, is whether Trooper Condley's conduct would have communicated to a reasonable person that he could not answer Condley's questions and leave. *Ibid.* at 10, 210 S.W.3d at 855–56.

■ We must consider the totality of the circumstances, a broad mandate. *Smith v. State*, 321 Ark. 580, 585–86, 906 S.W.2d 302, 305 (1995). The cases identify various facts bearing on whether a seizure occurred. These circumstances include: the threatening presence of several officers; an officer's display of a weapon; some physical touching of the citizen; and an officer's use of language or a tone of voice indicating that compliance with the officer's request might be compelled. *Ibid.* Whether the officer tells a person that he is free to go, or speaks other parting words, is another relevant fact. *Lilley v. State*, 362 Ark. 436, 440, 208 S.W.3d 785, 788 (2005); *Bumgardner*, 98 Ark.App. at 160, 253 S.W.3d at 3–4. The federal cases on this issue echo the relevance of all these circumstances. *E.g.,*

*U.S. v. Pulliam,* 265 F.3d 736, 740–41 (8th Cir.2001); *U.S. v. Ledesma,* 447 F.3d 1307, 1314 (10th Cir.2006). And they highlight others. For example, whether the officer's continued questioning "change[s] the climate so that the reasonable listener would view participation in the exchange as freely terminable" is another relevant circumstance. *U.S. v. Sandoval,* 29 F.3d 537, 542 (10th Cir.1994).

This case is similar to *Lilley,* which also involved a valid traffic stop and the officer's post-warning questioning. *Lilley,* 362 Ark. at 437–39, 208 S.W.3d at 786–88. The State argued that, after the officer issued the warning, Lilley was not detained because a reasonable person would have felt free to leave. *Ibid.* at 440, 208 S.W.3d at 788. Our supreme court disagreed. *Ibid.*

The circumstances of the *Lilley* stop and this one were similar, though not identical. The officer asked Lilley to come back to his patrol car, where there was a drug dog in the backseat, and Lilley complied. *Lilley,* 362 Ark. at 437–38, 208 S.W.3d at 786–87. The officer then ran the appropriate checks, asked Lilley some general questions, and issued a warning. *Ibid.* Here, Bedsole voluntarily got out of his car and spoke with Trooper Condley near the front of the patrol car. Bedsole remained between the vehicles while Condley ran the appropriate checks and asked him general questions. This record contains no evidence that Condley had a drug dog with him. In sum, the citizen's location in *Lilley* presented greater coercive circumstances than in this case.

Trooper Condley then issued Bedsole the warning and, after a moment's pause, said "[l]et me ask you a question." Officer Condley testified that he "gave [Bedsole] a warning and handed his driver's license back and then started talking to him about if he had anything illegal in the vehicle." 362 Ark. at 438, 440, 208 S.W.3d at 787–88.

Bedsole also testified that, after Trooper Condley issued the warning and returned his paperwork, "[h]e never quit talking to me." The video confirms this testimony. Similarly, after issuing Lilley a warning and handing his paperwork back, the officer "immediately launched into additional questions" about whether Lilley was carrying anything illegal in his car. 362 Ark. at 440, 208 S.W.3d at 788. The immediacy of Trooper Condley's continued questioning of Bedsole did not change the encounter's climate. 362 Ark. at 440, 208 S.W.3d at 788; *see also Sandoval,* 29 F.3d at 542. Finally, the Trooper, like the officer in *Lilley,* never told Bedsole that he was free to go. 362 Ark. at 440, 208 S.W.3d at 788.

This case presents a closer question than *Lilley.* After considering the totality of the circumstances, however, we conclude that a reasonable person would not have felt free to ignore Trooper Condley's final questions and proceed on his way. We therefore hold that the post-warning encounter was not consensual. Because the State concedes that Condley did not have reasonable suspicion, the Trooper illegally detained Bedsole. The circuit court should have suppressed all the evidence obtained as a result of that illegal detention. *Lilley,* 362 Ark. at 445–46, 208 S.W.3d at 792.

Reversed and remanded.

VAUGHT, C.J., and HART, J., agree.