James Jesse LILLEY *v.* STATE of Arkansas

CR 04-1382 208 S.W.3d 785

Supreme Court of Arkansas
Opinion delivered May 26, 2005

*Christian & Byars*, by: *Eddie Christian, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant James Jesse Lilley conditionally pled guilty to possession of marijuana with intent to deliver and possession of drug paraphernalia and was sentenced to twenty-four months' imprisonment. He reserved the right to appeal from the circuit court's denial of his motion to suppress under Arkansas Rule of Criminal Procedure 24.3(b). He asserts in his appeal that the circuit court erred in denying his motion to suppress, because when a traffic stop is over, reasonable suspicion is required to detain a person and his vehicle further to conduct a canine sniff. In his case, he claims that the police officer who arrested him lacked reasonable suspicion to detain him and his vehicle further.

The court of appeals reversed and remanded the circuit court's denial of Lilley's motion to suppress and reversed his convictions. *See Lilley v. State*, 89 Ark. App. 43, 199 S.W.3d 692 (2004). The State then petitioned for review by this court which we granted. We reverse the order of the circuit court.

The testimony at Lilley's suppression hearing reveals the following sequence of events. On December 4, 2002, Officer Mike Bowman of the Van Buren Police Department was traveling eastbound on Interstate 40, when he observed Lilley's car drive off the road three times. He pulled Lilley over. After doing so, Officer Bowman talked to him through the passenger window and smelled a strong odor of air freshener. Officer Bowman also saw that Lilley was drinking energy drinks which he testified were "to keep [Lilley] awake." He asked for and obtained Lilley's driver's license and vehicle paperwork and then asked Lilley to accompany him back to his patrol car. Officer Bowman testified that since it was raining, he was going to issue Lilley a written warning. While in the patrol car, Officer Bowman ran the usual warrant checks and talked with Lilley, who told him that he was on his way to Chesapeake, Virginia, to visit his mother whom he had not seen in a couple of years. Lilley told Officer Bowman that he was from California and that he worked as a farmer, which Officer Bowman testified "struck [him] as odd."

A one-way car rental agreement from California to Virginia was included in the paperwork which Lilley gave to Officer Bowman. The agreement showed that the vehicle had been rented to William Haller, who was not present, but it also listed Lilley as an additional driver. Lilley said that he planned to drive back to California after a ten-day vacation and further explained that Haller had rented the vehicle for him, because Lilley did not have

a credit card.[1] After Officer Bowman completed writing Lilley's warning, he handed everything back to Lilley.

At that point, Officer Bowman asked Lilley if he had anything illegal in the vehicle. He testified that he asked Lilley this based on his smell of the air freshener, the rental car whose renter was not in the vehicle, the one-way travel, and Lilley's nervousness. Officer Bowman said that Lilley's nervousness "got worse[,]" and he asked Lilley whether he had any guns or dead bodies in his vehicle. Lilley responded "no," while keeping eye contact. However, when Officer Bowman asked whether Lilley had any marijuana in his vehicle, Lilley looked away and said "no" in a softer tone. Officer Bowman asked Lilley if he had any cocaine or methamphetamine in his car, and Lilley responded "no" while looking back up.

Officer Bowman next asked Lilley for consent to search his vehicle, and Lilley refused. Officer Bowman responded that he was going to run his drug dog around the vehicle. The dog had been in the back seat of the patrol car during the stop. Before Officer Bowman conducted the canine sniff, a second police officer arrived on the scene and sat with Lilley in Officer Bowman's patrol car. The drug dog alerted to Lilley's trunk, and three duffel bags containing marijuana were found and seized.

Following the hearing on Lilley's motion to suppress, the circuit court entered its order denying the motion. The circuit court found that there was probable cause for Officer Bowman to stop Lilley initially. The court further observed:

> The officer smelled a strong odor of air freshener coming from the vehicle. After the Defendant was questioned regarding his license, rental agreement and where he was going. [sic] The officer testified that the Defendant's demeanor, extreme nervousness exhibited by shaking, the fact that the renter of the car was not present and answers to the Defendant's questions regarding the duration of his trip, employment, and contents of the vehicle all led the officer to request consent to search the vehicle. Consent was denied. . . .

---

[1] Officer Bowman initially testified that Lilley explained to him that Haller backed out of the trip at the last minute. That does not appear to be on the videotape of the stop, which is part of the record in this case, but many of Lilley's statements made to Officer Bowman are inaudible on the tape.

The circuit court concluded that under Arkansas case law and the facts presented, "after a lawful stop by the officer, of the Defendant's vehicle, that no justification is necessary for a canine sniff, and that once the dog alerted to the vehicle, indicating the presence of drugs, that the officer then had probable cause to go forward with a general search of the vehicle."

Lilley's sole issue on appeal is whether the circuit court erred in denying his motion to suppress the marijuana which had been found as a result of an illegal canine sniff. He urges that this court must first determine whether federal or state law requires Officer Bowman to have developed reasonable suspicion to detain him after the traffic stop was over in order to conduct a canine sniff.

This case comes to this court on the State's petition for review. When this court grants review following a decision by the court of appeals, it reviews the case as though the appeal had been originally filed with this court. *See, e.g., McElyea v. State*, 360 Ark. 229, 200 S.W.3d 881 (2005). When considering the denial of a motion to suppress evidence, this court conducts a *de novo* review based on the totality of the circumstances. *See Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004). We look to findings of facts to assess whether clear error exists, and we determine whether those facts give rise to reasonable suspicion or probable cause after giving due weight to inferences drawn by the trial court. *See id.*

We first observe that Officer Bowman's initial vehicular stop of Lilley appears to have been entirely legal. In *Sims v. State, supra,* this court noted that in order for a police officer to make a traffic stop, he must have probable cause to believe that the vehicle has violated a traffic law. Officer Bowman testified that he observed Lilley's car drive off the road three times. Based on this testimony and Lilley's failure to contest it, there was nothing illegal about the initial stop. We view the traffic stop as completed after the warning and vehicle documentation were handed to Lilley.

The next question concerns whether Officer Bowman had reasonable suspicion to detain Lilley after the traffic stop was completed. In *Sims v. State, supra,* this court held that under our criminal rules, once the legitimate purpose of a valid traffic stop is completed, a police officer must have a reasonable suspicion that the person is committing, has committed, or is about to commit a felony or a misdemeanor involving danger to persons or property, in order to continue to detain that person for purposes of a canine sniff. *See* Ark. R. Crim. P. 3.1.

The State first contends that Lilley was not detained by Officer Bowman when the police officer continued to ask him questions following the return of his paperwork, because a reasonable person would have felt free to leave. The State's position is that Lilley was only detained when Officer Bowman decided to run the drug dog around Lilley's car. We disagree with the State's theory of the case. A person has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave. *See Jefferson v. State*, 349 Ark. 236, 76 S.W.3d 850 (2002).

■ In the instant case, Officer Bowman testified that he asked Lilley to come back with him to his patrol car. The testimony further reveals that while sitting in the patrol car with Lilley, Officer Bowman did a criminal history check. All the while, Officer Bowman's drug dog was present in the back seat of the police vehicle. At no point was Lilley told that he was free to go. Moreover, Officer Bowman, after handing over his paperwork to Lilley, immediately launched into additional questions about whether Lilley had anything illegal in his vehicle. Under these facts, taken as a whole, we cannot say that a reasonable person would have believed he was free to leave.

The next question is whether Officer Bowman had already formed a reasonable suspicion at the conclusion of the valid traffic stop that Lilley was committing, had committed, or was about to commit a felony or misdemeanor under Rule 3.1, in order to further detain him, ask him questions, and conduct a canine sniff of his car.[2] "Reasonable suspicion" is defined under this court's rules of criminal procedure as:

> . . . a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful

---

[2] While the United States Supreme Court recently approved the use of a narcotics-detection dog as not being violative of the driver's Fourth Amendment rights, it did so where the sniff was conducted *during* the lawful traffic stop which was not extended beyond the time necessary to complete the criminal history check and issue the warning ticket. *See Illinois v. Caballes*, 543 U.S. 405, 125 S. Ct. 834 (2005). The present case is distinguishable in that Officer Bowman's stop of Lilley was rendered complete when he handed Lilley back his paperwork, driver's license, and citation. *See Sims v. State, supra.* Thus, because the dog run was conducted *after* the legitimate purpose of the traffic stop had been completed, *Caballes* appears to be inapposite.

arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to imaginary or purely conjectural suspicion.

Ark. R. Crim. P. 2.1 (2004). This court has held that "[w]hether there is reasonable suspicion depends on whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity." *Laime v. State*, 347 Ark. 142, 155, 60 S.W.3d 464, 473 (2001) (quoting *Smith v. State*, 343 Ark. 552, 570, 39 S.W.3d 739, 750 (2001)).

In addition, the Arkansas Criminal Code lists several factors for determining whether a police officer has reasonable suspicion:

(1) The demeanor of the suspect;

(2) The gait and manner of the suspect;

(3) Any knowledge the officer may have of the suspect's background or character;

(4) Whether the suspect is carrying anything, and what he is carrying;

(5) The manner in which the suspect is dressed, including bulges in clothing, when considered in light of all of the other factors;

(6) The time of the day or night the suspect is observed;

(7) Any overheard conversation of the suspect;

(8) The particular streets and areas involved;

(9) Any information received from third persons, whether they are known or unknown;

(10) Whether the suspect is consorting with others whose conduct is "reasonably suspect";

(11) The suspect's proximity to known criminal conduct;

(12) Incidence of crime in the immediate neighborhood;

(13) The suspect's apparent effort to conceal an article;

(14) Apparent effort of the suspect to avoid identification or confrontation by the police.

Ark. Code Ann. § 16-81-203 (1987).[3]

 The State urges that the following facts mandate a conclusion that under a totality-of-the-circumstances analysis, Officer Bowman possessed a reasonable suspicion to continue to detain Lilley for purposes of conducting a canine sniff: (1) that Lilley was nervous and shaking, despite the heat being on in both his vehicle and Officer Bowman's vehicle; (2) that Lilley's rental agreement was for one-way travel, despite the fact that he planned to return to California; (3) that the vehicular rental was made in another person's name, and (4) that the car smelled strongly of air freshener.[4] While this court has observed that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion, *see Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003), and § 16-81-203(1) refers to the suspect's demeanor as a factor, this court has also held that nervousness alone does not constitute reasonable suspicion of criminal activity and grounds for detention. *See Laime v. State, supra*. Despite the fact that Lilley was shaking, he did not exhibit any additional signs of nervousness, such as an inability to maintain eye contact with Officer Bowman or evasiveness, prior to the conclusion of the traffic stop. Accordingly, his nervousness, without any other questionable circumstances, would not constitute reasonable suspicion.

Nor does there appear to be anything inherently suspicious about using a rental car rented by a third party even when combined with the nervousness of the suspect. Certainly, the Eighth Circuit Court of Appeals agrees with that conclusion. *See United States v. Beck*, 140 F.3d 1129 (8th Cir. 1998) (holding that

---

[3] This statute was amended in the current General Session by Act 1994 of 2005. Subsection 14 of the statute will now read:

(14) Apparent effort of the suspect to avoid identification or confrontation by a law enforcement officer.

[4] The State, on appeal, appears to have abandoned the arguments regarding the presence of energy drink cans on the floorboard of Lilley's car and Officer Bowman's suspicion that Lilley was not a farmer.

the totality of the circumstances failed to generate reasonable suspicion to warrant Beck's renewed detention where (1) Beck was driving a rental car rented by an absent third party; (2) the car was licensed in California; (3) there was fast-food trash on the passenger-side floorboard; (4) there was no visible luggage in the passenger compartment of the car; (5) Beck had a nervous demeanor; (6) Beck's trip was from a drug-source state to a drug-demand state; and (7) the officer disbelieved Beck's explanation for the trip).

In the case at hand, Lilley explained to the police officer that his friend had rented the car for him because he did not have a credit card, and the rental agreement did not contradict that fact as it showed Lilley as an additional driver. While the State further points to the fact that the rental was for a one-way trip, we do not believe that there is anything inherently suspicious about that fact either. Lilley explained to Officer Bowman that he was going home to Virginia to visit his mother but did intend to return to California at a later date. The State cites this court to *United States v. Sokolow*, 490 U.S. 1 (1989), for the proposition that unusual travel plans can support a finding of reasonable suspicion, but the *Sokolow* Court reached that conclusion based on a number of factors, including: (1) that Sokolow traveled under an alias; (2) that he paid $2,100 for two round-trip tickets from a roll of $20 bills; and (3) that he stayed in Miami for only forty-eight hours, even though the trip from Honolulu to Miami took twenty hours. Facts such as those in *Sokolow* are more supportive of reasonable suspicion than those in the instant case.

As a final factor, the strong scent of air freshener might also be considered an innocent act, yet one that when found in conjunction with other factors may constitute reasonable suspicion. On this point, we agree with the jurisprudence of the Eighth Circuit Court of Appeals. In *United States v. Foley*, 206 F.3d 802 (8th Cir. 2000), which the State cites and relies on, the Eighth Circuit Court of Appeals cited to the presence of a "masking odor" as one of the factors which led that court to affirm a finding of reasonable suspicion. But in that case, in addition to Foley's nervousness, there was his inability to recall the name of his purported daughter-in-law and a vast divergence between his story and his driver's story regarding their travel accommodations. *See also United States v. Barry*, 394 F.3d 1070 (8th Cir. 2005) (officer had reasonable suspicion to detain where he saw mist inside the vehicle and smelled air freshener and marijuana); *United States v.*

*Fuse*, 391 F.3d 924 (8th Cir. 2004) (officer had reasonable suspicion to extend stop where there was (1) a strong odor of air freshener; (2) Fuse had a prior arrest; (3) the car did not belong to Fuse or his passenger; (4) Fuse and his passenger were traveling from California; (5) Fuse had an unusual explanation for traveling to Kansas City; (6) Fuse and his passenger continued to be unusually nervous even after being advised that only a warning citation was being issued; and (7) the officer observed a mobile telephone and "NoDoz" in the car). We note in this regard that the Tenth Circuit has held that the scent of a masking agent alone is insufficient to establish reasonable suspicion. *See United States v. Villa-Chaparro*, 115 F.3d 797 (10th Cir. 1997) (also holding that when coupled with other indicia of criminal activity, the presence of air freshener supports a reasonably brief inquiry).

While the State is correct that several of the factors on which it relies have been used by courts to support a finding of reasonable suspicion, those factors have been relied on in conjunction with other, more serious behavior, such as no proof of car ownership, a prior arrest, inconsistent stories with other travelers, or unusual travel plans. In this case, our focal point must be at the time the traffic stop was concluded. *See Sims v. State, supra; Laime v. State, supra.* We are unwilling to condone a dog sniff following the conclusion of a traffic stop merely because someone is traveling through Arkansas in a rental car which smells of air freshener and that person appears nervous after being stopped by police officers. We agree with the Eighth Circuit that "it is impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation." *United States v. Beck*, 140 F.3d at 1137 (quoting *United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997)).

In addition, we note that this case bears some similarities to the facts in *Sims v. State, supra.* In *Sims*, this court examined the stop of appellant Sims by a drug-interdiction unit on Interstate 55 within the city limits of Blytheville. While patrolling, police officers observed Sims's Chevy Tahoe traveling northbound and believed that he might be "impeding traffic." After positioning his patrol car behind the vehicle, one of the police officers noticed that Sims's left rear brake light was out and pulled Sims over.

Officer Willey testified that Sims appeared nervous and was not listening to what Willey was telling him. Sims then asked his passenger to step on the brakes so Sims could see whether the brake light was out. At that point, Officer Willey observed that Sims

began to sweat. Sims told Officer Willey that he had just been to look at a swing set at Wal-Mart. Willey, however, thought Sims's statement was strange. When asked where he was headed, Sims, who had Illinois license plates, explained that he had just picked up a friend in Mississippi. His passenger said that he was traveling with his brother and could only produce a birth certificate, when asked for identification.

Prior to the issuance of a warning ticket, the second officer ran background checks on both Sims and his passenger which revealed that both had prior arrests for drugs. Officer Willey then returned Sims's identification information back to him and allowed him to start walking back to his car. At that point, Officer Willey asked Sims if he had anything illegal in his vehicle and asked Sims for consent to search the car. Despite Sims's statement that he had nothing illegal in the car and had no time for Officer Willey to search his car, Officer Willey detained Sims to conduct a canine sniff of his vehicle, which resulted in cocaine being found.

On appeal, Sims challenged the circuit court's denial of his motion to suppress. This court reversed the circuit court's denial on the basis that Officer Willey did not have reasonable suspicion at the conclusion of the valid traffic stop to detain Sims further. This court observed that the reasonable-suspicion analysis must focus on what facts Officer Willey gleaned *before* the traffic stop was over. We emphasized that while Officer Willey testified that Sims appeared nervous and was sweating, mere nervousness could not constitute reasonable suspicion of criminal activity and grounds for detention. Furthermore, we noted that there was nothing odd or unusual about Sims sweating in the middle of July. Additionally, we found that Sims's comment as to the swing set could have been a nervous attempt at conversation. Thus, viewing the totality of the circumstances, we found that Officer Willey had no particular factual basis which would have given rise to an objective and reasonable suspicion of criminal activity. We held that Sims's continued detention after the legitimate purpose of the traffic stop was completed violated Arkansas Rule of Criminal Procedure 3.1.

Similarly, in the instant case, we look to the totality of the circumstances relied on by the State at the conclusion of the traffic stop. Those factors included: (1) a one-way rental, (2) a rental in another person's name, (3) nervousness, and (4) the presence of air freshener. We hold that those factors did not give Officer Bowman reasonable suspicion to detain Lilley further for a

canine sniff of his car, after the traffic stop was concluded. We reverse the circuit court's denial of the motion to suppress.

█ There is one additional point. We agree with the State that the subjective findings of Officer Bowman, as to when he developed reasonable suspicion to detain, are not determinative. Officer Bowman did testify that at the time he returned Lilley's paperwork to him, he did not intend to detain him. But our analysis must turn on objective factors. *See United States v. Williams,* 271 F.3d 1262 (10th Cir. 2001) (the inquiry must be based on objectively reasonable factors and not the police officer's state of mind). *See also United States v. Jones,* 990 F.2d 405 (8th Cir. 1993) (decision of reasonable suspicion is based on objective facts).

Reversed and remanded.