Jose Manuel MERAZ-LOPEZ *v.* STATE of Arkansas

CA CR 04-888 211 S.W.3d 564

Court of Appeals of Arkansas
Opinion delivered June 29, 2005

[Rehearing denied October 5, 2005.]

*David L. Dunagin*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. Appellant, Manuel Meraz-Lopez, appeals a jury verdict convicting him of possession of marijuana with intent to deliver and possession of drug paraphernalia and sentencing him to a total of 240 months' imprisonment. His sole challenge to this conviction is that the trial court erred by denying his motion to suppress evidence seized from the trunk of his car at the scene of a traffic stop. We agree.

At 10:04 p.m. on January 30, 2004, Arkansas State Trooper Jason Aaron activated his lights to pull over a 2004 Crown Victoria that was following the vehicle in front of it too closely. The trooper testified that the car took longer than most cars to pull over in response to his lights. When the car stopped, Aaron approached the passenger side of the vehicle and explained to the appellant, who was the driver, that he had been following the car in front of him too closely. Appellant explained that the car in front of him slowed down as it crossed the state line, causing him to follow it too closely. While speaking to appellant, Aaron noticed that appellant had a brand new cellular telephone, new atlases, fast food wrappers, and energy drinks scattered in the front. Aaron considered the presence of these items as indicators of possible criminal activity.

Aaron explained that "we've encountered [possession of new cell phones] in almost every single one of our drug arrests" because drug couriers were provided telephones so that the drug suppliers could track the couriers. While the new phone was not suspicious on its own, the appellant's hands were shaking when he handed the trooper his paperwork, consisting of the car's rental agreement and his driver's license. In addition, the rental agreement indicated that the car had been rented on January 28 in Palmdale, California, and was due back there on February 4, while appellant's driver's license indicated that he lived in Phoenix, Arizona. Appellant's reason for the discrepancy was that he was driving to Little Rock to visit family for two days before returning to Palmdale and moving to California. The trooper viewed this information as suspicious in that appellant was driving more than 3,400 miles for a two-day visit, and that in his experience, drug couriers take such atypical trips.

After checking appellant's paperwork, the trooper asked appellant to come to the back of the car so he could issue him a warning. The trooper described appellant at this point as "extremely nervous" as though he were "going to pass out." The

trooper viewed appellant's nervousness as excessive when compared with the nervousness he normally encounters during traffic stops. In response to the trooper's question inquiring whether appellant felt well, however, appellant explained that he was shaking and starting to feel sick due to going suddenly from the warm car to the cold, night air.

Trooper Aaron issued appellant a warning at approximately 10:10 p.m., six minutes after the stop, and then asked whether he could search appellant's car. As this was occurring, Olen Craig, also of the Arkansas State Police, arrived at the scene. Although Aaron and appellant had been conversing in English during the entire stop, when the trooper asked for consent to search, appellant seemed suddenly to not understand English. Other testimony indicated that Trooper Craig and an officer who later interviewed appellant, Special Agent Doug McAllister, agreed with Trooper Aaron's assessment that appellant appeared to be fluent in English. Trooper Aaron nevertheless retrieved a consent form in Spanish, and appellant began to review it. The trooper asked appellant whether he felt okay, and appellant responded that he felt like he was going to be sick, going from hot to cold without a jacket. The trooper explained that because he was concerned that appellant was going to fall, he asked appellant whether he wanted to sit in his patrol car, and appellant said, "yes."

Although appellant eventually signed the consent form, it is unclear whether he did so before Trooper Eric Schrock arrived at the scene with his drug dog and ran it around the car from 10:24 to 10:26 p.m.[1] The dog alerted on the trunk of the car, resulting in the discovery of three boxes containing approximately ninety-five pounds of marijuana.

Appellant does not challenge Trooper Aaron's initial stop of the car, but argues that the trial court erred in failing to suppress the evidence seized from the traffic stop because a reasonable suspicion did not exist to continue to detain the appellant after the warning ticket was issued. In his argument, appellant alleges constitutional violations as well as violation of Rule 3.1 of the Arkansas Rules of Criminal Procedure. The State argues that the

---

[1] The State has a heavy burden to prove by clear and positive testimony that consent was freely and voluntarily given. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002); *Norris v. State*, 338 Ark. 397, 993 S.W.2d 918 (1999). The testimony in this case fell short of the burden to prove that the consent was given prior to the search.

constitutional argument is not preserved for appellate review because appellant relied exclusively upon Rule 3.1 at the suppression hearing. However, we need not decide the waiver issue in that appellant's reliance upon Rule 3.1 is well taken, and we reverse on that basis.

When we review the denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Simmons v. State,* 83 Ark. App. 87, 118 S.W.3d 136 (2003). In order for a police officer to make a traffic stop, he must have probable cause to believe that the vehicle has violated a traffic law. *Sims v. State,* 356 Ark. 507, 157 S.W.3d 530 (2004). Whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually guilty of the violation that the officer believed to have occurred. *Id.* at 512, 157 S.W.3d at 533. As part of a valid traffic stop, a police officer may detain the party while the officer completes certain routine tasks — such as computerized checks of the vehicle's registration, the driver's license, and the driver's criminal history — and writes the driver a citation or warning. *Id.* at 514, 157 S.W.3d at 535. During this process, the officer may ask the party routine questions such as the party's destination, the purpose of the trip, and whether the officer may search the vehicle; the officer may act on whatever information is volunteered. *Laime v. State,* 347 Ark. 142, 60 S.W.3d 464 (2001).

Under Ark. R. Crim. P. 3.1, a detention without arrest may transpire under certain circumstances:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

 Pursuant to Ark. R. Crim. P. 2.1, "reasonable suspicion" is defined as "a suspicion based on facts or circumstances[,] which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion . . . a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Our supreme court has held that the determination of whether an officer has reasonable suspicion depends on whether, under the totality of the circumstances, the officer has specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity. *Laime,* 347 Ark. at 155, 60 S.W.3d at 473. In the absence of reasonable suspicion, it is unlawful for law enforcement to detain a party once the legitimate purpose of the traffic stop is concluded. *Sims,* 356 Ark. at 515, 157 S.W.3d at 536.

This case is similar to *Sims, supra.* In *Sims,* during a valid traffic stop made midday, the police noticed that the driver was nervous and sweating and thought it was strange that he volunteered an odd comment about having just been to Wal-Mart to buy a swing set. After telling Sims that the traffic stop was over, the police then decided to run a drug dog around the car. Our supreme court held that reasonable suspicion to detain did not exist, primarily because nervousness alone does not give rise to reasonable suspicion. *Id.*

The recent case of *Lilley v. State,* 362 Ark. 436, 208 S.W.3d 785 (2005) is also instructive.[2] In *Lilley,* our supreme court focused on when the traffic stop was over and held that reasonable suspicion did not exist based on the fact that Lilley was nervous, he was drinking energy drinks, his car smelled like air freshener, the rental agreement was for one-way travel, and the car was rented in another person's name, although Lilley was listed as an additional driver. As our supreme court explained, taken as a whole, these facts are seemingly innocent. But *cf. Burks v. State,* 362 Ark. 558, 210 S.W.3d 62 (2005) (distinguishing *Lilley* and finding that the facts at the time the traffic stop was over suggested that the rental car had been stolen).

Likewise, under the totality of the circumstances in this case, we hold that the facts do not establish "specific, particularized, and

---

[2] We attempted to certify this case to the supreme court; however, the supreme court declined to accept certification upon handing down its decision in *Lilley v. State.*

articulable reasons" that criminal activity was afoot. The presence of a brand new cellular telephone, new atlases, fast food, and energy drinks scattered in the front are seemingly innocent. Even if appellant's shaking was due to nervousness, rather than the cold air of the January night, nervousness alone is not a sufficient basis to detain an individual. *See Laime, supra.* Consequently, the trial court erred in failing to suppress the evidence obtained as a result of the search of the car.

While a consent to search was eventually signed, the uncertainty of when it was signed cannot remedy the unwarranted detention which resulted in the officer's securing the consent.

Accordingly, we reverse and remand.

CRABTREE, J., agrees.

PITTMAN, C.J., concurs.

## SUPPLEMENTAL OPINION ON
## DENIAL OF REHEARING
## OCTOBER 5, 2005

PER CURIAM. Petition for rehearing is denied.

HART, GLADWIN, BAKER, and ROAF, JJ., agree.

PITTMAN, C.J., and CRABTREE, J., dissent.

JOHN MAUZY PITTMAN, Chief Judge, dissenting. In a published opinion delivered on June 29, 2005, we reversed appellant's convictions for possession of marijuana with intent to deliver and possession of drug paraphernalia because we concluded that the arresting officer lacked a reasonable suspicion to further detain appellant after issuing him a warning ticket. Although I joined in that opinion, I must agree with the State's assertion that our decision was incorrect because we failed to properly consider the totality of the circumstances involved in the decision to extend the detention. Instead, I believe that we fell into the error, discussed by the United States Supreme Court in *United States v. Arvizu*, 534 U.S. 266 (2002), of evaluating and rejecting individual factors in isolation from one another rather than considering how each factor contributed to the totality of the circumstances with which the police officer was confronted.

The error is evident in our statement on page six of our opinion that "nervousness alone is not a sufficient basis to detain an individual." Quite clearly, we did not properly consider appellant's extreme nervous agitation in light of other circumstances, particularly those concerning appellant's statement to the officer that he was driving from Palmdale, California, to Little Rock — a distance of over 3,400 miles — for a two-day family visit. Although either appellant's travel plans or his extreme nervousness might be viewed as innocuous in isolation, in combination they are telling. I believe that we were mistaken in holding otherwise, and I would grant the State's petition for rehearing.

CRABTREE, J., joins in this dissent.