Anthony Manriquez ENRIQUEZ *v.* STATE of Arkansas

CA CR 05-1219                                        244 S.W.3d 696

Court of Appeals of Arkansas
Opinion delivered December 6, 2006

*J. Marvin Honeycutt*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. The circuit court denied the motion of appellant, Anthony Manriquez Enriquez, to suppress marijuana seized from the trunk of a car driven by appellant.

He then pleaded guilty to the crime of possession of marijuana with the intent to deliver, with his plea conditioned upon his right to appeal from the denial of his motion. On appeal, appellant argues that the circuit court erred in denying his motion to suppress the marijuana because the deputy lacked reasonable suspicion to detain appellant past the end of the traffic stop and conduct a canine sniff of the car. We reverse and remand.

On appeal, we conduct a de novo review of the circuit court's denial of the motion to suppress evidence based on the totality of the circumstances, examining findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion, while giving due weight to inferences drawn by the circuit court. *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004). To conduct a canine sniff of a motorist's vehicle after the legitimate purpose for the initial traffic stop has terminated, the officer must have developed reasonable suspicion to detain before the legitimate purpose ended. *Id.* Reasonable suspicion exists if, under the totality of the circumstances, the police have a specific, particularized, and articulable basis for concluding that the person may be involved in criminal activity. *Id.* In *Sims*, the Arkansas Supreme Court concluded that the legitimate purpose of the traffic stop ended when the officer handed Sims his license, registration, and a traffic warning.

At the suppression hearing, the State presented the testimony of former Crawford County Deputy Sheriff Jeff Smith and a videotape of Smith's traffic stop of appellant that was made by a video recorder in Smith's patrol car. Smith testified that while on duty on April 4, 2004, he saw a white Ford Taurus with a Nevada license plate following too closely to another vehicle. The videotape shows that Smith stopped the Taurus and made contact with appellant, who was the driver and sole occupant of the car. The videotape also shows that Smith asked for appellant's driver's license and vehicle registration. Smith then asked where appellant was going, and appellant said that he was going to New York City to visit his daughter and that he would be there for four or five days.

Smith testified that appellant provided him with a rental agreement for the car, which showed a rental date of March 11, 2004, and a return date of March 18, 2004, and that appellant told him that he had contacted the rental company and talked to a "Robert" and obtained an extension to April 2, 2004. Smith also testified that he obtained appellant's Arizona driver's license and

was told by dispatch that appellant's license was suspended. Smith testified that he told appellant of the suspension and issued him a warning for following too closely. He further testified that he did not issue a warning or citation for the suspended license.

On the videotape, appellant denied knowledge of the suspension, and when questioned by appellant, Smith was unable to identify the date of the suspension. Smith asked dispatch for the reason for the suspension, and dispatch replied, "Just says court action required." Smith then specifically stated to appellant that he would not issue a citation for driving with a suspended license. Smith returned the materials to appellant and asked appellant if he had obtained an extension on the rental agreement. Appellant answered affirmatively, explaining that he had gotten an extension, stating, "That is the reason why I wrote Robert on there. 04/02/04," and that he had rented the car three weeks earlier. Smith made no further inquiry about the car and then asked appellant where in New York City that his daughter lived. Appellant told him that she lived in Manhattan.

The videotape shows that Smith then stated that there were problems on the highway with transportation of narcotics. He asked if appellant had anything illegal in the car. Appellant stated that he did not, and Smith asked if appellant would consent to a search of the vehicle. Appellant refused. Immediately thereafter, Smith removed a dog from his patrol vehicle and worked the dog around the vehicle. He told appellant that he was going to look inside the car. Smith opened the driver's side door and removed the keys. He used the keys to electronically open the trunk, where a blanket covered several large bundles of marijuana.

Smith testified that appellant appeared "nervous to a certain extent and very talkative." Smith also stated that, when someone's license is suspended, "we don't allow them to drive off, we usually contact somebody or tow the vehicle," and that he would not have allowed appellant to drive off with a suspended license but instead would have had the vehicle towed and assisted appellant in getting a ride. He also testified that when he made his initial contact with appellant, he noticed luggage in the back seat and trash and other items in the car, and he noted that the car had a "lived-in look." He further testified that he had no report of the car being stolen.

■ Appellant does not challenge the traffic stop. Rather, he argues that Smith lacked reasonable suspicion to continue to detain appellant and conduct a canine sniff of his car after issuing a

traffic warning. The State makes a number of arguments for affirmance of the circuit court's denial of appellant's motion to suppress. First, the State contends that appellant failed to establish that he had standing to challenge the search of the car. We conclude, however, that appellant, as the driver of the car and the person named in the rental agreement, had standing to challenge the search of the car. *See Littlepage v. State*, 314 Ark. 361, 863 S.W.2d 276 (1993) (holding that a defendant has no standing to question the search of a vehicle owned by another person unless he can show that he gained possession from the owner or from someone who had authority to grant possession). Here, the rental agreement established standing.

The State also argues that because appellant's license was suspended and Smith testified that he would not have allowed appellant to drive the vehicle, the legitimate purpose of the traffic stop had not ended when Smith searched appellant's car. We note that Rule 12.6(b) of the Arkansas Rules of Criminal Procedure provides that "[a] vehicle impounded in consequence of an arrest, or retained in official custody for other good cause, may be searched at such times and to such extent as is reasonably necessary for safekeeping of the vehicle and its contents." Here, however, there was no arrest, and Smith informed appellant that he would not issue a citation. After excluding the possibility of arrest and after returning the materials to appellant, Smith began to question appellant about the possible presence of narcotics in his car. When appellant refused to consent to a search, Smith used his dog to conduct a canine sniff, which is indicative of an evidentiary search. It is apparent that Smith did not impound the car, and his actions as shown on the videotape belie his assertion at trial that he was not going to allow the vehicle to leave. Accordingly, we conclude that, as in *Sims*, the legitimate purpose of the traffic stop ended when Smith issued a warning for following too closely, announced that he was not issuing a citation for driving on a suspended license, and returned the materials to appellant without taking further action.

The State further contends that, even if the legitimate purpose of the stop had ended, Smith had reasonable suspicion to further detain appellant and determine the lawfulness of his conduct. The State notes that Smith testified that there was luggage in the back seat, that the car had a "lived-in" look, that appellant appeared "nervous to a certain extent and very talkative," that

appellant had a suspended driver's license, and that appellant had the car for three weeks and was traveling from Nevada to New York with an expired agreement.

■ Mere nervousness, however, cannot constitute reasonable grounds for detention. *Sims, supra*. Moreover, we cannot conclude that a car that looks "lived in" constitutes grounds for reasonable suspicion, as there was testimony that appellant had the car for three weeks. *See Meraz-Lopez v. State*, 92 Ark. App. 157, 211 S.W.3d 564 (2005) (holding that the presence of scattered items in the front of the car does not provide reasonable suspicion). As for the suspended driver's license, as noted above, Smith had already completed his investigation of it when he told appellant that he would not issue a citation. The suspended license could not again provide reasonable suspicion to detain appellant, as *Sims* indicates that the resolved grounds for detention cannot continue to serve as a basis for detention. As for appellant's possession of the car for three weeks and traveling to New York City, we cannot say that this, as the State suggests, constitutes unusual travel plans.

The State notes Smith's testimony that the rental agreement was extended to April 2, 2004, and citing *Burks v. State*, 362 Ark. 558, 210 S.W.3d 62 (2005), argues that Smith had a reasonable suspicion that appellant was misappropriating the rental car company's property. In *Burks*, the defendant's car rental agreement specified that the car was not to be driven outside of California and Arizona and was due to be returned the day before the traffic stop occurred. The Arkansas Supreme Court held that reasonable suspicion to detain existed because the facts suggested that the car had been stolen, as it not only was overdue, but also it was being driven far away from the area in which it was meant to be returned.

When testifying that the rental agreement was extended to April 2, 2004, Smith was merely recalling what he was told by appellant. The videotape reveals that Smith returned the materials and asked if appellant had obtained an extension, and appellant replied that he had and that was the reason he wrote "Robert" on the rental agreement. Appellant then says, "04/02/04," but he does not indicate that this was the date the extension expired. Other than asking how long he had the car in his possession, Smith made no further inquiry about the car rental. Furthermore, there was no evidence indicating that the car could be driven only in certain areas, and Smith admitted that he did not have a report of

the car being stolen. Under the totality of the circumstances, we cannot conclude that this evidence provided reasonable suspicion to detain.

Reversed and remanded.

BIRD, NEAL, VAUGHT, and ROAF, JJ., agree.

GRIFFEN, J., concurs.

PITTMAN, C.J., and GLOVER and CRABTREE, JJ., dissent.

WENDELL L. GRIFFEN, Judge, concurring. I agree that we should reverse and remand in this case because the officer did not have reasonable cause to detain appellant after the traffic stop had concluded. I write separately to highlight that the transcript from the videotape of the stop plainly shows that Officer Jeff Smith requested backup and formed his intent to conduct a canine sniff *before* he was notified that appellant's license was suspended. At that point, the officer knew only that appellant was following another vehicle too closely and reported that he was traveling to New York City to visit his daughter for four or five days. He did not at that point know that appellant's driver's license was suspended or that the rental contract appeared to have expired.

It is telling that the officer called for backup and formed his intent to perform a canine sniff when the only known or suspected illegal activity was that appellant was following another vehicle too closely. Sadly, this case demonstrates that the concept of reasonable suspicion is viewed — at least by the officer in this case — as justification to search a motorist's vehicle when he pleases.

TERRY CRABTREE, Judge, dissenting. The trial court's denial of the motion to suppress is not clearly erroneous because the traffic stop was not completed when the canine sniff was conducted. Therefore, I dissent.

In *Sims v. State,* 356 Ark. 507, 147 S.W.3d 530 (2004), our supreme court recognized that, as part of a valid traffic stop, a police officer may detain a traffic offender while the officer completes certain routine tasks, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning. During this process, the officer may ask the motorist routine questions such as his destination, the purpose of the trip, or whether the officer may

search the vehicle, and he may act on whatever information is volunteered. *Id*. The *Sims* court held, however, that a motorist cannot be further detained, once those routine tasks are completed, unless the officer has developed reasonable suspicion for continuing the detention.

In *Sims*, it was clear when the legitimate purpose of the traffic stop was over. The officer declared that the "traffic stop was done" when he returned Sims's papers to him and allowed Sims to walk back to his vehicle. *Id*. at 510, 147 S.W.3d at 532. Based on *Sims*, the majority in this case myopically concludes that the legitimate purposes of the stop came to an abrupt end with the physical transfer of the warning ticket, rental papers, and suspended driver's license. I disagree with their application of the law to the facts of this case.

Here, the officer repeated throughout his testimony that the traffic stop was not over when he ran his dog around the vehicle. The facts and evidence support that assertion. In less than one minute after the officer stopped appellant's vehicle, the officer headed back to his patrol car with appellant's driver's license and the rental papers. Five minutes elapsed before the officer again approached appellant's vehicle. At this point, the officer knew that appellant's driver's license had been suspended, and it appeared that the rental agreement had expired. The officer did not simply return appellant's documents at this juncture and send appellant on his way. Not surprisingly, the officer asked appellant to step out of the vehicle whereupon he, legitimately, inquired about these and other matters.

During the ensuing two-minute discussion, the officer informed appellant that his license was suspended, and pursuant to appellant's request, he called dispatch to inquire as to when the license had been suspended. The officer advised that he was going to give appellant a warning ticket for following too closely, but that he was not ticketing him for driving on a suspended license. Appellant chatted with the officer about what speed he should travel. The officer then inquired about the expiration of the rental agreement, and he learned that appellant had obtained a verbal extension until April 2, two days prior to the stop, and that appellant had been driving the vehicle for three weeks. The officer then discussed appellant's travel plans, and he broached the subject of transporting narcotics. It was during the sixth minute of the stop, or one minute into the two-minute conversation, and before inquiring about the rental agreement, that the officer handed

appellant his license, the warning, and the rental agreement. During the seventh minute of the stop, the officer asked for, but was refused consent to search the vehicle, and he also began the canine sniff of the vehicle.

When properly considered, these facts demonstrate that the legitimate purpose of this brief stop did not end with the mere transmittal of the documents. That act coincided with or occurred during the course of the officer's conversation with appellant about matters that called for explanation concerning subjects that an officer may legitimately probe. This case illustrates that a bright line cannot always be drawn at the handing over of documents, and to draw an artificial line here at the officer's sleight of hand is to place form over substance. Based on the facts of this case, it is my conclusion that the officer did not prolong the detention beyond the time reasonably necessary to complete the traffic stop.

In addition, there was further evidence that the stop was not over with the transfer of the documents. The officer testified that he was intending to impound the vehicle because policy dictated that action when a motorist's driver's license is suspended. The majority makes a credibility determination and finds that the officer's testimony was not truthful. However, our standard of review requires us to defer to the trial court in assessing witness credibility. *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001). Moreover, that the officer did not yet tell appellant that his vehicle was to be impounded is not damning. I know of no rule requiring an officer to inform a traffic offender about his subjective intentions and planned course of action. It also makes good sense for an officer to withhold conveying distressing information so as to maintain a friendly atmosphere and thus avoid the potential of evoking an undesirable response from a motorist during the initial stage of a traffic stop. Of course, the officer in this instance did not get around to conveying this news to appellant because of the dog's positive alert on the vehicle and the discovery of 234 pounds of marijuana in the trunk. Once this occurred, telling appellant that he had planned to impound the vehicle because of the suspended license became a moot point.

The officer's plan to impound the vehicle because of the suspended license is also cogent evidence that the contraband would be admissible under the inevitable discovery doctrine. Under this doctrine, evidence that might otherwise be suppressed is admissible if the State proves by a preponderance of the evidence that the police would have inevitably discovered the evidence by

lawful means. *Thompson v. State*, 333 Ark. 92, 966 S.W.2d 901 (1998); *Willoughby v. State*, 76 Ark. App. 329, 65 S.W.3d 453 (2002). It is well settled that police officers may conduct a warrantless inventory search of a vehicle that is being impounded in order to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger. *Thompson v. State, supra.* Rule 12.6 of the Arkansas Rules of Criminal Procedure allows an officer to impound a vehicle and inventory its contents for "any good reason." The supreme court has held that a motorist's suspended license is good reason to impound and inventory a vehicle, even though the motorist is not placed under arrest for driving on a suspended license. *Id.; see also, e.g., Benson v. State*, 342 Ark. 684, 30 S.W.2d 731 (2000); *Casey v. State*, 97 Ark. App. 1, 242 S.W.3d 627 (2006). Because appellant's vehicle was going to be impounded, the contraband would have been inevitably discovered during an inventory permitted under Rule 12.6.

For these reasons, I would affirm the denial of the motion to suppress.

PITTMAN, C.J., and GLOVER, J., join in this opinion.