2010 Ark. App. 30

**Ronney CAIN, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–152.**

Court of Appeals of Arkansas.

Jan. 13, 2010.

Erwin L. Davis, Fayetteville, for appellant.

Dustin McDaniel, Att'y Gen., by: Eileen W. Harrison, Ass't Att'y Gen., for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Ronney Cain was convicted of six separate counts in three consolidated cases in Washington County on November 18, 2008. On appeal he contends that the trial court erred by denying his motions to suppress related to traffic stops on June 5, July 9, and July 20, 2008. We affirm his convictions.

Appellant was involved with three arrests in the summer of 2008 involving separate traffic stops. The charges were consolidated for trial purposes. On June 5, 2008, appellant was stopped by an officer with the canine unit because the license tag was hanging off appellant's car. According to the officer, appellant was extremely nervous and never calmed down. Appellant produced the registration, but did not have his driver's license and did not own the vehicle. The officer performed a criminal background check, which revealed that appellant had prior narcotics and gun violations. After appellant declined to give consent to have the car searched, the officer walked his dog around the car, and the dog alerted twice at the open windows. The officer then searched the car, finding marijuana and a loaded gun.

On July 9, 2008, Officer Eric Evans was called by a drug-task-force officer who was working the area around appellant's neighborhood. Evans was called when appellant drove by the undercover officer and stared at him. Appellant then parked facing toward the street in a driveway, which was not his. Evans responded to the call, and appellant pulled out of the driveway in front of Evans. He then turned into his own driveway a few blocks away. Evans testified that appellant failed to use his turn signal when turning. He stopped appellant in his driveway, pulling in behind him. Appellant got out of the car, and Evans told him to get back in. Appellant showed Evans the knife he had in his car. Evans asked if he could search appellant's person and car. Evans believed that appellant agreed to the request by standing

up and cooperating without objection as Evans performed a pat-down search. Appellant allowed Evans to search his pockets, and Evans put the contents on top of the car. When Evans began to remove items from appellant's left pocket, appellant began to struggle and scream. Evans wrestled appellant and called for backup. Another officer arrived and assisted in handcuffing and placing appellant in the squad car. After appellant had been secured, Evans found methamphetamine and marijuana in the contents of the items from appellant's pockets. Appellant claimed that the car belonged to a woman. Evans eventually found three large fire safes in the back of appellant's car.

Appellant was placed under arrest after the methamphetamine and marijuana had been found, and he was placed in the patrol car once the drugs had been discovered. The car was towed to be searched because appellant and his father were becoming belligerent. More marijuana and methamphetamine were found when the car was searched.

On July 20, 2008, appellant was approached by an officer at 2:30 a.m. while sitting in his running car on the parking lot of Electric Cowboy. The officer smelled alcohol on appellant and suspected him of DWI. Appellant told the officer he was waiting on a girl named Jodi that worked there. Employees cleaning the parking lot told the officer that no Jodi worked there. The officer called for backup, and the new officer tested appellant for DWI, and appellant passed two field-sobriety tests, but did not pass the horizontal gaze nystagmus test. He was arrested for DWI, and the officers searched his car and found part of a marijuana cigarette and a small amount of methamphetamine in a wallet on the passenger seat.

After the trial court denied appellant's motions to suppress related to evidence seized in each instance, appellant was found guilty on all counts and sentenced to a total of thirty-eight years. He appeals these convictions, arguing that the evidence on which they rested was the product of three search and seizures that violated his rights, relying mainly on *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

We review suppression challenges de novo based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). We reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Boldin v. State*, 373 Ark. 295, 283 S.W.3d 565 (2008). Additionally, we defer to the circuit court's superior position to judge the credibility of witnesses. *Id.*, 283 S.W.3d at 570.

## I. *July 9 Traffic Stop*

In his argument for reversal, appellant stresses that even the arresting officer testified that appellant did not give a verbal "yes" or "no" when asked if his car could be searched. Appellant simply stood up, and the officer started to search his right pocket, putting the contents on the car. When the officer went to appellant's left pocket, where the officer could see a roll of money and a metal can (that was later found to contain methamphetamine), appellant started jumping up and down and screaming. The officer applied force and took him to the ground because of the safety issue. Appellant argues that these facts do not prove by clear and positive testimony that consent to a search was given. Appellant argues consent must be unequivocal. *See Latta v. State*, 350 Ark. 488, 88 S.W.3d 833 (2002); *Stone v. State*,

348 Ark. 661, 74 S.W.3d 591 (2002); *Norris v. State*, 338 Ark. 397, 993 S.W.2d 918 (1999).

Appellant also disputes the officer's testimony that he neglected to use a turn signal. Appellant points out that, at the suppression hearing, the officer said appellant was under arrest when he was placed in the back seat of the squad car, but at the trial, he said appellant was not under arrest at the time he was placed in the squad car, but was put there so the search could ₅be completed. Appellant claims that he told the officer he did not consent to the search while he was in the squad car. He argues that, because he was not under arrest at that time, the search of the vehicle occurred before his arrest—not incident to it.

Appellant claims that Rule 12.1 of the Arkansas Rules of Criminal Procedure (2009) is now unconstitutional in light of *Gant, supra,* which appellant contends held that searches incident to arrest are unlawful and unreasonable if the arrestee is already secured in the back of a squad car where it is not likely that he can reach into his own vehicle and retrieve a weapon or destroy evidence.

▉▉▉▉ The State points out that validity of consent is a factual question, and the trial court's finding of fact will not be reversed unless it is shown to be clearly erroneous. *Gonder v. State*, 95 Ark.App. 144, 234 S.W.3d 887 (2006). Appellate courts can also affirm when the right result is reached for the wrong reason. *Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 289 S.W.3d 79 (2008). The appellate court reviews the entire record to affirm the trial court's ruling, not just the record of the suppression hearing. *Hignite v. State*, 265 Ark. 866, 581 S.W.2d 552 (1979).

The trial court ruled that appellant initially consented to a search of his person, which produced the contraband but withdrew his consent after the arrest. Further, the trial court found that the officers had reasonable cause for the arrest and that the subsequent search of the vehicle was either incident to a lawful arrest or a valid inventory search and was therefore proper under the Arkansas Rules of Criminal Procedure.

▉▉▉▉ ₆The State asserts that appellant was stopped for suspicious behavior and a traffic violation. This was an investigative stop. Police must therefore have had particularized and articulable reasons indicating appellant was involved in criminal activity. *Davis, supra.* Once legally detained, Rule 3.4 (2009) of the Arkansas Rules of Criminal Procedure allows a pat-down search for weapons or dangerous items. *Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999). There must be justification for detaining the suspect under Rule 3.1. *Id.* Probable cause or reasonable suspicion is not necessary for an officer to request consent for a search. *Howe v. State*, 72 Ark.App. 466, 39 S.W.3d 467 (2001). An officer must have reasonable cause to arrest without a warrant. Ark. R.Crim. P. 4.1 (2009). This is when facts within an officer's knowledge are sufficient to permit him to believe that an offense has been committed by the person to be arrested. *McKenzie v. State*, 69 Ark.App. 186, 12 S.W.3d 250 (2000). A search incident to a lawful arrest is valid even if conducted before the arrest, provided that the arrest and search are substantially contemporaneous and there was probable cause to arrest before the search began. *Id.* Under *Gant, supra,* a search incident to a lawful arrest is permissible related to vehicles when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle. This relates to any area of the vehicle. *Id.*

The State admits that the *Gant* decision limits an officer's authority to conduct a warrantless search of a car incident to an arrest, but contends that circumstances which create probable cause to believe that contraband or evidence of drug crimes will be found in the vehicle give rise to an independent basis for conducting a warrantless search. *United States v. Martinez–Cortes*, 566 F.3d 767 (8th Cir.2009).

Appellant argues that the State failed to demonstrate that consent was unequivocal. He also argues that the search of his car was unconstitutional because the officer began the search before placing him under arrest, therefore, it was not incident to arrest; that he refused permission to search the car; and that the areas of the car searched were beyond the purview of a valid search incident to an arrest under *Gant.* The State claims, and we agree, that the officer was justified in stopping appellant to investigate because of the circumstances—a drug task-force officer saw appellant acting suspiciously in the neighborhood, and the arresting officer saw appellant fail to use his turn signal. After the stop, appellant gave the officer an improbable reason for his behavior. The officer properly asked if he could search appellant's person. The trial court found consent, and this should be given weight. However, even without the consent, the officer had reason to search appellant because he was a threat to the officer's safety in light of the knives he was carrying. Ark. R.Crim. P. 3.4 (2009). The discovery of methamphetamine and marijuana in appellant's pockets gave rise to his arrest and probable cause to search the car and its contents. *See Gant, supra.* Accordingly, we affirm on this point.

## II. *June 5, 2008 Traffic Stop*

Appellant argues that his nervousness was not enough to give the officer cause to walk the dog around the car. Appellant did let him search his person, but not the car. He claims that it was obvious that the officer forced the dog to alert at the windows. Appellant cites *Meraz–Lopez v. State*, 92 Ark.App. 157, 211 S.W.3d 564 (2005), where the officer did not have reasonable suspicion to detain defendant after the issuance of a warning ticket; nervousness, as well as a new cell phone, atlases, fast-food wrappers, and energy drinks were insufficient for reasonable suspicion. *See also Lilley v. State*, 362 Ark. 436, 208 S.W.3d 785 (2005); *Hoey v. State*, 73 Ark.App. 118, 42 S.W.3d 564 (2001).

The State cites *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), where the Supreme Court held that the use of a well-trained dog during a lawful traffic stop does not implicate legitimate privacy interests. *See also State v. Harris*, 372 Ark. 492, 277 S.W.3d 568 (2008). Appellant argues that evidence was inadmissible because the officer did not have reasonable suspicion to conduct a canine sniff of the car. However, based on *Caballes* and *Harris*, this argument is without merit, as the officer did not need additional suspicion to allow the dog to sniff the exterior of the car. Accordingly, we affirm on this point.

## III. *July 20, 2008 Traffic Stop*

Appellant argues that the facts related to this incident fit perfectly with *Gant, supra,* in which the court held that police may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest. He argues that the *Gant* court outlawed a warrantless search of a vehicle

after the arrestee, appellant here, had been secured in a police car.

However, appellant's reading of *Gant* as applied here is wrong. What was actually found by officers incident to the search is not the standard by which we measure whether *Gant* was followed. For example, an open container of alcohol could have been found in appellant's vehicle, making the officer's search permissible under *Gant*. As it happens, evidence of intoxication was found in appellant's car. Under the Omnibus DWI Act, "intoxicated" means "influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination of alcohol, and a controlled substance." Ark. Code Ann. § 5–65–102 (Repl.2005). Since intoxication includes the use of controlled substances, the officers acted reasonably by searching those areas within appellant's reach as he sat in his car in a deserted parking lot. The discovery of marijuana and methamphetamine constituted evidence that he was using controlled substances in violation of the Act. Accordingly, we affirm on this point.

Affirmed.

GRUBER, GLOVER, MARSHALL, and HENRY, JJ., agree.

BROWN, J., agrees in part, dissents in part.

WAYMOND M. BROWN, Judge, agreeing in part and dissenting in part.

I agree with the majority that appellant's convictions resulting from the June 5 and July 9, 2008 traffic stops should be affirmed. However, I disagree that the conviction resulting from appellant's DWI arrest outside the Electric Cowboy on July 20, 2008, should likewise be affirmed.

On July 20, 2008, Officer Scott O'Dell of the Fayetteville Police Department came in contact with appellant at approximately 2:35 a.m. in the parking lot of the Electric Cowboy. At the time of the contact, the club had been closed for over thirty minutes. Officer O'Dell became concerned when he observed appellant's car in the parking lot with the motor running. Officer O'Dell routinely went through the parking lots of the night clubs to "make sure there are not any fights or intoxicated people." Officer O'Dell approached appellant's vehicle and could immediately "smell an odor of intoxicants, alcohol, coming from out of the vehicle before [he] ever said anything to [appellant]." Appellant told Officer O'Dell that he was sitting in the parking lot waiting for a worker named Jodi to get off work. Officer O'Dell found this explanation odd because there were a lot of items in appellant's passenger seat. Officer O'Dell asked some employees of the club, who were outside, if Jodi worked there. Officer O'Dell learned that no one by the name of Jodi worked at the club and relayed the information to appellant. Appellant told Officer O'Dell that "he had been in the bar earlier and asked for Jodi and they told him that she didn't work there." According to Officer O'Dell, appellant's story did not make sense. At this time appellant was not free to leave so Officer O'Dell got appellant's driver's license and requested the DWI unit.

Detective Jason French responded. He conducted three field-sobriety tests on appellant: the horizontal-gaze-nystagmus test (HGN), the walk-and-turn test, and the one-legged-stand test. Appellant performed the walk and turn and the one-legged stand "fairly well"; however, the officer observed four of the six clues of intoxication during the HGN. Appellant was arrested for suspicion of DWI. Appellant's vehicle was searched subsequent to his arrest. A marijuana cigarette was found on the driver's side of the car and a

small amount of crystal meth was found in a business-card wallet on the passenger side of the vehicle. Appellant's breathalyzer result was .06, so he was never charged with DWI. Appellant unsuccessfully moved to have the drug evidence suppressed. He stood jury trial on November 12, 2008, and was convicted. This appeal followed.

Appellant contends that the search of his vehicle subsequent to his arrest on July 20, 2008, was unconstitutional in light of *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In *Gant,* the court clarified its prior authority regarding searches incident to the lawful arrest of a recent occupant of a vehicle, indicating that the passenger compartment of such a vehicle may not be searched for weapons if a suspect is handcuffed and in the back seat of the patrol vehicle, as a suspect who has been so secured may no longer access the interior of the vehicle. *Id.* at 1714. The court in *Gant* additionally held, however, that "[a]lthough it does not follow from *Chimel* [*v. California* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) ], we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* at 1719 (citations omitted).

According to appellant, at the time of the search, he was already under arrest and secured in the back of the police car. Appellant argues that the State failed to prove that evidence of his arrest (suspicion of DWI) might be found in his vehicle. Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of

the arrest. *Gant, supra.* When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies. *Id.*

In the present case, appellant was arrested for suspicion of DWI after Officer O'Dell smelled alcohol coming from inside appellant's running car. Detective French was called to the scene and had appellant undergo three field-sobriety tests. Appellant performed well on two of the tests but failed the HGN. Therefore, appellant was arrested for suspicion of DWI. Appellant's vehicle was searched incident to that arrest. The State contends that under the "Omnibus DWI Act, 'intoxicated' means influenced or affected by the ingestion of alcohol, *a controlled substance,* any intoxicant, or *any combination of alcohol, [and ] a controlled substance.*" However, this argument is not convincing.

According to the evidence adduced at the suppression hearing, appellant was suspected of DWI due to the smell of alcohol coming from inside his car and his unbelievable story about being in the parking lot. Although controlled substance is included in the meaning of intoxicated, there is no indication that, at the time of his arrest, the officers suspected appellant of being under the influence of a controlled substance. There was no evidence at the suppression hearing or at trial to support the majority's contention that the officers were looking for evidence of appellant's intoxication. When the officers were questioned concerning their decision to search appellant's vehicle, they replied that they searched the vehicle because it was incident to a lawful arrest. This is the type of search *Gant* seeks to prohibit. *Gant* limits an officer's search of a vehicle following an arrest. The majority's opinion fails to recognize that there are limita-

tions and restrictions, which must be followed and adhered to. Officers must be put on notice about what is allowed following *Gant,* and the majority fails to define these limitations. Instead, the majority sends the message that nothing has changed and officers can continue to search a vehicle incident to a lawful arrest without anything more to prompt such a search. Therefore, I respectfully dissent from the majority's decision to affirm appellant's conviction resulting from the July 20, 2008 search of his vehicle.