Rhonda K, Wood, Justice, dissenting. I respectfully dissent from' the majority opinion. Law enforcement developed facts in the course of their investigation that amounted to reasonable suspicion that MacKintrush was engaged in drug-related criminal activity. . MacKintrush’s continued detention after the legitimate purpose of the traffic stop had ended was therefore justified. I would affirm the circuit court. ' The majority accurately describes our standard of review, pointing out that we are to consider the totality of the circumstances. See Cockrell v. State, 2010 Ark. 258, 370 S.W.3d 197. In application, however, the- majority isolates each suspicious fact and claims that each 1infact, standing alone, was innocuous. But these facts cannot be sealed off from one another and given the most charitable interpretation. Each fact must be viewed collectively and in context. Moreover, each fact that the State presented was competent evidence of reasonable suspicion; many of these' facts even fall within the statutory-'factors that the majority has outlined. For example,.factor four (4) and factor thirteen (13) were present: whether the suspect was carrying anything, what he was carrying, and his efforts to conceal. . Here,- MacKintrush was carrying a package that smelled like dryer sheets. According to the postal inspector, who was trained in drug trafficking and had worked with the North Little Rock Police Department’s Narcotics Division for at least seven years, dryer sheets are used as masking agents in the shipment of illegal drugs. . One cannot deny the unique and recognizable odor of dryer sheets. ■ What’s more, the majority completely disregards the testimony about the inspector’s experience. Factor eight (8) was also present: the particular streets and areas involved. The postal inspector testified that a package sent to the same address had been intercepted before. In addition, neither MacK-intrush nor the listed recipient appeared as residents at that location. Last, factor fourteen (14) was present — MacKintrush attempted to avoid identification by presenting himself as a different person when he signed for the package. When we have found reasonable suspicion lacking in the past, the suspicious facts were much .more tenuous. For example, inSims v. State, we held that a prolonged stop was unjustified by reasonable suspicion when the motorist was .nervous, sweating, and had recently been to Wal-Mart. 356 Ark. 507, 157 S.W.3d 530 (2004). We also said reasonable suspicion In was lacking in Lilley v. State, 362 Ark. 436, 208 S.W.3d 785 (2005). There, the car smelled like air freshener and the motorist was nervous, had a car-rental agreement for. a one-way trip from California to Virginia, and was listed as an alternative driver on the rental agreement. We stated that “we are unwilling to -condone a dog sniff following the conclusion of a traffic stop merely because someone is traveling through Arkansas in a rental car which smells of air freshener and that person appears nervous after being stopped by police officers.” 362 , Ark. at 444, 208 S.W.3d at 791, The police had an even stronger case here, and, .consistent with Lilley, the odor of a masking agent was not the. only reason for the prolonged detention. Indeed, the.facts outlined above, when considered together and in totality, gave law enforcement a coherent narrative of criminality: MacKintrush had illegal drugs shipped to an address where he did not live, directed to a recipient with a different name, and signed that person’s name instead of his own when he picked up the package, which emitted the odor of a common masking agent. The evidence would not have supported an arrest warrant or a search warrant, but the law enforcement officers’ decision to prolong the traffic stop to conduct a dog sniff wasn’t based on conjecture or a hunch either. It was based on experience, expertise, and investigation. Put a different way, the facts and circumstances gave rise to a reasonable suspicion that MacK-intrush was engaged in drug-related criminal activity. See Ark. R.Crim. P. 2.1. Law enforcement therefore had a legal justification to detain MacKintrush after the legitimate purpose ■ of the traffic stop had ended. Brill, C.J., and Wynne, J., join.