John H. BOLDIN *v.* STATE of Arkansas

CR 07-1024 283 S.W.3d 565

Supreme Court of Arkansas
Opinion delivered April 24, 2008

*Dana Reece*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant John H. Boldin was convicted of first-degree murder and aggravated robbery by a Logan County jury. He received consecutive sentences of life imprisonment and forty years' imprisonment. On appeal, Boldin raises three points of error: (1) the circuit court erred in denying his motion to suppress; (2) the circuit court erred in limiting his presentation of his defense; and (3) the circuit court erred in denying his motion for directed verdict.

### Sufficiency of the Evidence

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *See Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). Although Boldin challenged the denial of his directed-verdict motion in his final point on appeal, double jeopardy concerns require that we review arguments regarding the sufficiency of the evidence first. *See McDuffy v. State*, 359 Ark. 180, 196 S.W.3d 12 (2004).

In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in a light most favorable to the State and considers only the evidence that supports the verdict. *Id.* Substantial evidence is that evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

Circumstantial evidence may provide the basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* In other words, if there are two equally reasonable conclusions as to what occurred, this merely gives rise to a suspicion of guilt, which is not enough to support a conviction. *Id.* Upon review, the appellate court's role is to determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.* Overwhelming evidence of guilt is not required in cases based on circumstantial evidence; rather, the test is one of substantiality. *Id.*

A person commits murder in the first degree when "[w]ith the purpose of causing the death of another person, the person causes the death of another person." Ark. Code Ann. § 5-10-102(a) (Repl. 2006). Robbery is committed when, "with the purpose of committing a felony or misdemeanor theft . . . the person employs or threatens to immediately employ force upon another." Ark. Code Ann. § 5-12-102(a) (Repl. 2006). Aggravated robbery is committed when a person "commits robbery" and is either "armed with a deadly weapon; [r]epresents by word or conduct that he or she is armed with a deadly weapon; or [i]nflicts or attempts to inflict death or serious physical injury upon another person." Ark. Code Ann. § 5-12-103(a) (Repl. 2006).

The following facts were presented to the jury in the instant case. On August 21, 2005, Pamela Agilar saw her son Kevin Agilar packing his car, a white Dodge Avenger with a gray hood. Kevin was preparing to travel from his home in North Little Rock to Louisiana for a job. The next day, Kevin Agilar's body was found under the State Highway 109 bridge, in Logan County.

Also on August 21, Cody Young saw Agilar and Boldin together at Young's home in Gravel Ridge. At that time, Boldin allegedly told Young that he intended to kill Agilar and steal his car. Boldin also indicated that he was on his way to the home of Young's brother, James Dustin Carter. So, once the two left, Young called Dustin Carter to tell him about Boldin's intentions.

In the early morning hours of August 22, Boldin arrived at Dustin and Savannah Carter's home in Hartman, Johnson County. According to Savannah, Dustin and Boldin momentarily left the room, while she remained in bed. Dustin returned a few minutes later and retrieved his gun, which he gave to Boldin. Dustin had Savannah drive him and Josh Baccam to the State Highway 109 bridge, with Boldin following behind in the victim's car. When

they reached the bridge, Boldin drove the victim's car under the bridge. Savannah turned her car around and waited in a nearby parking lot. Boldin then returned from beneath the bridge, still driving the victim's car. Later that day, Savannah witnessed Boldin and Dustin attempting to clean the inside of the victim's car and burning things taken from inside the car. Boldin also brought her a basket of clothing from the car and asked her to wash the clothing.

Dustin Carter testified that the morning Boldin arrived at his home, Boldin was driving a white car, and he showed Dustin an unconscious person in the passenger's seat. He admitted that he allowed Boldin to borrow his gun, a Bryco Arms nine-millimeter pistol. Dustin testified to leading Boldin to the State Highway 109 bridge and stated that when Boldin drove under the bridge, the passenger was in the car; but, when Boldin returned, the passenger was gone. Dustin also admitted helping Boldin clean the victim's car, and he received a stereo from the car. According to Dustin, Boldin told him that he had shot Agilar and showed Dustin a spent bullet Boldin had retrieved from the car. Johnny Hern, a neighbor of the Carters, testified that Boldin joked about the idea of shooting Agilar. He also showed Johnny Hern a spent bullet. Floyd Hern, Dustin's uncle, also testified that Boldin was in possession of Agilar's car. Boldin was arrested after law enforcement located the victim's car near the Carter home.

The state medical examiner, Dr. Daniel Konzelman, testified that Agilar died of a single gunshot wound to the head and the body had some minor injuries that could have been inflicted by the body being rolled or by the body striking the ground from a standing position. He also stated that the large amounts of blood found near the body indicated that the victim was probably shot either under the bridge or shortly before the body was dumped there.

A Bryco Arms nine-millimeter pistol and some of Boldin's clothing were recovered by police after a search of the Carter home. Forensic testing of Boldin's clothing revealed the presence of Agilar's blood. Samples taken from the car were identified as being the victim's blood, and Boldin's finger and palm prints were found inside the victim's car.

In addition, a cigarette lighter was among the items in Boldin's possession when he was arrested. Upon examining the lighter, officers found a spent bullet hidden inside. Testing at the

state crime laboratory revealed that tool markings on both the spent bullet and an empty casing found near the body were consistent with those produced by the same type of Bryco Arms nine-millimeter pistol found in the Carter home.

Proof of a criminal defendant's intent must usually be inferred from the circumstances of the crime. *Leaks v. State*, 345 Ark. 182, 45 S.W.3d 363 (2001). Intent may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Id.* In addition, a person is presumed to intend the natural and probable consequences of one's actions. *Id.*

Ample evidence was presented to support Boldin's convictions. Several witnesses saw Boldin with the victim's car, and two witnesses saw Boldin drive the car under the bridge where the victim's body was found and return without the victim in the car. Boldin also told Cody Young that he intended to kill Agilar and steal his car, and after the murder he boasted about shooting Agilar and showed two witnesses the bullet he found in the victim's car. The bullet he was carrying was consistent with the suspected murder weapon, and the victim's blood was found on his clothing.

Boldin asserts that Cody Young, Savannah Carter, and Dustin Carter were accomplices to the crime, and without their testimony, the State would not have been able to prove its case. He asks this court to evaluate the evidence without the testimony of his alleged accomplices pursuant to Arkansas Code Annotated § 16-89-111(e) (Repl. 2005). However, none of the witnesses were charged as accomplices, and Boldin neither requested that the trial court declare them accomplices nor did he proffer an accomplice jury instruction for the record. Accordingly, we conclude that Boldin's argument as to accomplice testimony was not preserved for appeal. *See Windsor v. State*, 338 Ark. 649, 656, 1 S.W.3d 20, 24 (1999).

## Presentation of a Defense

In line with his arguments concerning the sufficiency of the evidence and accomplice testimony, Boldin also argues that the circuit court hampered his ability to present his defense by limiting defense counsel's questions to witnesses regarding their involvement in the crimes. He argues that both the prosecution and the

trial court mistook his attempts to question witnesses as an attempt to present an accomplice-liability defense, and, thus, the court erroneously limited defense counsel's cross-examination of key witnesses. He asserts that it was the State's duty to prove accomplice liability on the part of Cody Young, Dustin Carter, and Savannah Carter. He again argues that the State would not have been able to meet its burden of proof without the accomplice testimony of those witnesses. In effect, he reargues his sufficiency-of-the-evidence argument in relation to the circuit court's limiting of his defense.

Prior to trial, the prosecution filed a discovery motion requesting defense counsel's disclosure of Boldin's proposed defense, pursuant to Arkansas Rule of Criminal Procedure 18.3. Defense counsel never disclosed a specific defense to the prosecutor, and instead asserted a defense of general denial. During cross-examination of Savannah Carter, defense counsel began asking her to elaborate on her involvement in the crimes, and the prosecutor objected. The prosecutor argued that defense counsel was attempting to implicate Savannah Carter and Dustin Carter as possible perpetrators of the crime, without disclosing Boldin's plan to assert an accomplice defense. A lengthy discourse between counsel and the trial judge followed, a pertinent part of which is quoted below:

> DEFENSE COUNSEL: We haven't said anything about an accomplice defense, your Honor, the State has.
>
> COURT: Okay.
>
> DEFENSE COUNSEL: We've not said, yes, we're using an accomplice defense. [The prosecutor] hasn't accused us of using an accomplice defense.
>
> COURT: Then any sort of questions that go to close to an accomplice defense I'm going to — are irrelevant.

We review evidentiary decisions by the trial court under an abuse of discretion standard. *Travis v. State*, 371 Ark. 621, 269 S.W.3d 341 (2007). Under Arkansas Rule of Criminal Procedure 18.3, "[s]ubject to constitutional limitations, the prosecuting attorney shall, upon request, be informed as soon as practicable before trial of the nature of any defense which defense counsel intends to use at trial and the names and addresses of persons whom

defense counsel intends to call as witnesses in support thereof."
Ark. R. Crim. P. 18.3 (2007). We have held that Rule 18.3 applies
with equal force to testimony offered in support of a general denial
defense and testimony offered to support an affirmative defense.
*Mitchell v. State*, 306 Ark. 464, 816 S.W.2d 566 (1991). Discovery
in criminal cases, within constitutional limitations, must be a two
way street. *Id.* This interpretation promotes fairness by allowing
both sides the opportunity for full pretrial preparation, preventing
surprise at trial, and avoiding unnecessary delays at trial. *Id.*

Boldin's argument that accomplice liability of the witnesses
was part of the State's burden of proof was a de facto attempt to
establish an accomplice defense by circumventing our long estab-
lished rules of procedure. Accordingly, we conclude that the
circuit court's decision to limit defense counsel's questioning of
the alleged accomplices was not an abuse of discretion.

### Motion to Suppress

Boldin claims that the investigating officer violated Arkansas
Rules of Criminal Procedure 2.2 and 2.3 when he arrived at the
Carter home and asked Boldin to show him the victim's car
without informing Boldin that he was not required to assist the
officer. Accordingly, Boldin argues that the circuit court should
have granted his motion to suppress the evidence recovered from
his interaction with police. In making his argument, Boldin
attempts to compare the circumstances of the instant case with our
case law regarding "knock and talk" procedures. *See State v. Brown*,
356 Ark. 460, 156 S.W.3d 722 (2004).

When reviewing a circuit court's decision to deny a defen-
dant's motion to suppress, we make an independent determina-
tion, based on the totality of the circumstances, and view the
evidence in the light most favorable to the State. *Scott v. State*, 347
Ark. 767, 67 S.W.3d 567 (2002). We reverse only if the circuit
court's ruling is clearly against the preponderance of the evidence.
*Id.* Additionally, we defer to the circuit court's superior position to
judge the credibility of witnesses. *Id.*

In the instant case, the Johnson County Sheriff's Depart-
ment received an anonymous phone call that a vehicle meeting the
description of Kevin Agilar's was in the vicinity of Johnny Hern's
house. Officer Donald Cunningham went to Johnny Hern's resi-
dence, and he was informed that Dustin Carter and his "buddy"
had just left in the car. Officer Cunningham then went to the

nearby home of Dustin Carter. Floyd Hern answered the door followed by Dustin. Officer Cunningham told Dustin that he had information that Dustin had recently been in a vehicle linked to a murder and stated that he was trying to locate the vehicle. Dustin told the officer that the car belonged to his friend and called Boldin to the door. Officer Cunningham explained the circumstances of his investigation to Boldin, whereupon Boldin told the officer that he had recently purchased the car from a friend for a cheap price. Boldin then commented that he knew the deal was "too good to be true." Officer Cunningham asked if Boldin would show him the car. Boldin answered in the affirmative and accompanied Cunningham in his squad car to where the victim's car was parked less than a mile behind the residence. Boldin was allowed to exit the car and walk around the area without restraints until Cunningham confirmed that the car belonged to the victim. At that point, he placed Boldin under arrest.

As to the applicability of Rule 2.3, Boldin's argument is clearly without merit. Rule 2.3 states that when an officer requests that a person come to or remain at a police station, prosecuting attorney's office, or other similar place, the officer "shall take such steps as are reasonable to make clear that there is no legal obligation to comply with such a request." Ark. R. Crim. P. 2.3 (2007). Here, Officer Cunningham simply did not ask Boldin to accompany him to the police station, prosecutor's office, or any other similar place. Similarly, Boldin's argument regarding the application of our standard for "knock and talk" cases also fails because we have expressly declined to extend our holdings in *Brown v. State, supra,* to situations other than the search of a residence. *Otis v. State,* 364 Ark. 151, 217 S.W.3d (2005).

Thus, the only question that remains is whether Officer Cunningham's actions were in violation of Rule 2.2. Under Ark. R. Crim. P. 2.2,

> (a) A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, appear at a police station, or to comply with any other reasonable request.

> (b) In making a request pursuant to this rule, no law enforcement officer shall indicate that a person is legally obligated to furnish information or to otherwise cooperate if no such legal obligation

> exists. Compliance with the request for information or other cooperation hereunder shall not be regarded as involuntary or coerced solely on the ground that such a request was made by a law enforcement officer.

Ark. R. Crim. P. 2.2 (2007).

This court has interpreted Rule 2.2 to provide that an officer may approach a citizen much in the same way a citizen may approach another citizen and request aid or information. *Scott v. State*, 347 Ark. 767, 67 S.W.3d 567 (2002). Not all personal intercourse between policemen and citizens involves "seizures" of persons under the Fourth Amendment. *Id*. A "seizure" of a person occurs when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a person. *Id*. Police-citizen encounters have been classified into three categories. *Id*.; *see also State v. McFadden*, 327 Ark. 16, 938 S.W.2d 797 (1997). The first and least intrusive is when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. *Scott v. State*, 347 Ark. 767, 67 S.W.3d 567. "Because the encounter is in a public place and is consensual, it does not constitute a 'seizure.' " *Id*. at 776, 67 S.W.3d at 573. The second is when the officer may justifiably restrain an individual for a short period of time if the officer has an "articulable suspicion" that the person has committed or is about to commit a crime. *Id*. The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he was not free to leave. *Id*. Finally, there is a full-scale arrest, which must be based upon probable cause. *Id*.

In the instant case, once the investigating officer learned that Boldin had recently "bought" the car, he had an articulable suspicion that Boldin had committed a crime. At that point, Officer Cunningham was justified in detaining Boldin for a reasonable amount of time. In fact, Boldin agreed to show the officer where the car was parked. According to the undisputed testimony, Boldin walked freely around the area of the victim's car until he was placed under arrest. Although Officer Cunningham was in uniform, he did not show Boldin his weapon, and he did not tell Boldin that he was required to assist him. We have never held that Rule 2.2 specifically requires an officer to inform a person that he is not required to assist the officer; instead, the rule just prohibits an officer from insinuating that the person is required to do so. *See* Ark. R. Crim. P. 2.2. Based upon the totality of the

circumstances, we cannot say that Officer Cunningham violated Rule 2.2. Thus, we affirm the circuit court's decision to deny Boldin's motion to suppress.

### Rule 4-3(h) Review

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions and requests made by either party that were decided adversely to Boldin, and no prejudicial error has been found. *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).

Affirmed.

DANIELSON, J., not participating.