Joseph M. BIENEMY *v.* STATE of Arkansas

CR 08-514                                          287 S.W.3d 551

Supreme Court of Arkansas
Opinion delivered September 18, 2008

*Mark Alan Jessee*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

D ONALD L. CORBIN, Justice. Appellant Joseph M. Bien- emy appeals the order of the White County Circuit Court convicting him of capital murder. On appeal, Bienemy argues that there was insufficient evidence to establish that he was an accomplice to the murder of Carlos Deadmon. As Bienemy was sentenced to life imprisonment without parole, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2). We affirm.

The record reflects that on the morning of November 26, 2006, Deadmon was shot twenty-two times as he was in his vehicle, attempting to leave the Pecan Street Apartments in Searcy. In investigating Deadmon's murder, Detective Jeff Nasser of the Searcy Police Department learned of three possible suspects, Bienemy, Quincy Hays, and Antonio Brinson. After several wit- nesses reported seeing a silver or gray Jeep in the apartment's parking lot prior to the murder, Detective Nasser located a Jeep fitting the witnesses' description at the Meadow Lake Apartments. Upon inspecting the vehicle, Detective Nasser noticed an Enter- prise Rental sticker on the back of the vehicle. Detective Nasser subsequently learned that Bienemy had rented the Jeep from Enterprise.

Bienemy was charged with being an accomplice to murder in violation of Arkansas Code Annotated section 5-10-104(a)(1) (Repl. 2006).[1] He was tried before a jury on January 15-16, 2008. At trial, Dr. Daniel Konzelmann of the Arkansas State Crime Lab testified regarding his findings in the autopsy of Deadmon. Ac- cording to Dr. Konzelmann, twenty-two gunshot wounds entered Deadmon's body, and he suffered an additional graze wound. Dr. Konzelmann stated that the trajectory of the wounds and the embedded glass in the victim's body indicated that Deadmon was seated in the driver's seat and shot through the vehicle's back glass.

Detective Steve Taylor of the Searcy Police Department testified about his involvement with the investigation into Dead- mon's death. In addition to explaining the evidence that was

---

[1] Bienemy was originally charged with first-degree murder, but the State amended the felony information on September 26, 2007, to charge him with capital murder.

recovered from the scene, Detective Taylor testified that witnesses at the scene told officers that there had been a gray Jeep parked in the area of the shooting and that the Jeep sped away from the area. Finally, Detective Taylor stated that he interviewed Jimmy Deadmon, the victim's brother, after the shooting and that Jimmy told him that there had been some sort of dispute between his brother and Bienemy.

Detective Nasser testified about the information he received that a gray Jeep Commander had been parked behind the victim's car. He also discovered a partially smoked cigar with a plastic tip on it at the scene, as well as another piece of cigar. Detective Nasser collected both items and sent them to the state crime lab to be tested for DNA analysis. Detective Nasser then located a gray Jeep matching the description of the one witnessed at the crime scene. Detective Nasser noticed that the Jeep had a sticker on the rear glass indicating that it had been rented from Enterprise Rental. After talking to employees of the Enterprise office in Searcy, Detective Nasser learned that Bienemy had rented a gray Jeep Commander on the morning of November 25, 2006, and in the rental contract had agreed to return the vehicle on November 27, 2006. Detective Nasser also testified that he viewed surveillance footage from a local gas station that depicted Bienemy exit the Jeep Commander at approximately 6:50 a.m. on the morning of November 26, 2006, go inside the station and pay for gas. According to Detective Nasser, it appeared as if a second person was in the vehicle, but he admitted that he could not positively state that there was a second person in the Jeep.

Laurel Bright, formerly a detective with the Searcy Police Department, testified regarding the statement that Bienemy voluntarily gave police during their investigation. Bright stated that after Bienemy was advised of his rights, he gave a statement indicating that he rented the Jeep Commander to drive to New Orleans with his girlfriend, Shaletha Blackwell, so that he could leave his car in Searcy for his dad to drive. He stated that Blackwell misplaced the keys, and they ended up driving his car instead, leaving Searcy at approximately 2:00 p.m. and arriving in New Orleans at 10:00 p.m. on November 25, 2006. Bienemy also told Bright that he was in New Orleans on November 26, that he was with Blackwell the entire time, and that he did not shoot Deadmon or pay anyone else to shoot him, nor was he involved in any type of dispute with Deadmon.

Beth Hill, a forensic DNA examiner with the state crime lab, testified that DNA found on the plastic mouth piece recovered at the scene of the crime matched a DNA sample provided by Bienemy "within all scientific certainty."

Darian Williams, who also lived at the Pecan Street Apartments, testified that he knew Bienemy because he used to buy crack cocaine from him. According to Williams, Deadmon had robbed Bienemy and his dad, Joe Knight, of $20,000. Bienemy instructed Williams to call him and let him know if he saw Deadmon. Williams also testified that on the evening of November 25, Bienemy called him and stated that Bienemy was in the parking lot of the Pecan Street Apartments, and if Williams needed anything to contact Knight. Williams stated that he saw the gray Jeep when he left later that evening, and that it was in the same spot the next morning when he left again. Williams also stated that he was at Knight's apartment on the morning of Deadmon's murder when Bienemy and another black male entered the apartment, with Bienemy carrying something wrapped in a towel.

Finally, Simone Robinson, Deadmon's girlfriend at the time of his death, testified that the morning of his murder she noticed a gray Jeep parked in a spot directly behind Deadmon's vehicle. Robinson stated that Deadmon had been to his car once that morning, when he decided to leave to get some cigarettes. At the time of the shooting, Robinson was on the balcony. There, she noticed the Jeep back up, and she saw a man wearing a mask exit the vehicle and begin shooting.

At the close of the State's case, Bienemy moved for a directed verdict, arguing there was insufficient evidence connecting him with the murder. The motion was denied, and Bienemy rested without presenting any evidence. Bienemy renewed his motion for directed verdict, and the case was subsequently submitted to the jury. The jury returned a verdict and sentence as previously set forth. This appeal followed.

As his sole point on appeal, Bienemy argues that there was insufficient evidence to establish that he was an accomplice to the murder of Deadmon. Specifically, Bienemy argues that the State failed to prove one of the three relevant factors necessary to establish that he was an accomplice, and it was therefore error for the trial court to submit the case to the jury. The State counters that there was sufficient evidence establishing Bienemy's guilt.

In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in a light most favorable to the State

and considers only the evidence that supports the verdict. *Boldin v. State*, 373 Ark. 295, 283 S.W.3d 565 (2008). Substantial evidence is that evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

When a theory of accomplice liability is implicated, we affirm a sufficiency-of-the-evidence challenge if substantial evidence exists that the defendant acted as an accomplice in the commission of the alleged offense. *See Hickman v. State*, 372 Ark. 438, 277 S.W.3d 217 (2008); *Wilson v. State*, 365 Ark. 664, 232 S.W.3d 455 (2006). We have said that there is no distinction between principals on the one hand and accomplices on the other, insofar as criminal liability is concerned. *Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007). When two people assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Id.* One cannot disclaim accomplice liability simply because he did not personally take part in every act that went to make up the crime as a whole. *Id.*

Even though it is not raised by the State, we must decide as a threshold issue whether Bienemy's directed-verdict motion is preserved for our review. At the close of the State's case, counsel for Bienemy moved for a directed verdict, stating:

> The Defendant's going to move for a judgment of acquittal . . . . [t]he State's failed to present a sufficiency of evidence on which the jury could even take this case and determine a finding of guilt. . . . [T]here is very little testimony . . . connecting this Defendant with the death of the victim, Carlos Deadmon.

Clearly, the motion for a directed verdict was not specific with regard to how the State failed to prove its case; however, on appeal, Bienemy now argues that the State failed to prove any of the necessary elements of accomplice liability.

A challenge to the sufficiency of the evidence is preserved by making a specific motion for directed verdict at both the conclusion of the State's case and at the conclusion of all of the evidence. Ark. R. Crim. P. 33.1; *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995). Rule 33.1 reads in pertinent part:

> (a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the

prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor.

. . . .

(c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. A renewal at the close of all of the evidence of a previous motion for directed verdict or for dismissal preserves the issue of insufficient evidence for appeal. If for any reason a motion or a renewed motion at the close of all of the evidence for directed verdict or for dismissal is not ruled upon, it is deemed denied for purposes of obtaining appellate review on the question of the sufficiency of the evidence.

The rationale behind this rule is that "when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof." *Pinell v. State*, 364 Ark. 353, 357, 219 S.W.3d 168, 171 (2005). Without a trial court's ruling on a specific motion, there is nothing for this court to review. *Ashley v. State*, 358 Ark. 414, 191 S.W.3d 520 (2004). Because counsel for Bienemy failed to make the specific motion regarding lack of evidence to prove that Bienemy was an accomplice, his argument is not preserved for our review.

Before leaving this point, we are mindful that the instant case is a capital murder case with a sentence of life imprisonment that requires us under Arkansas Supreme Court Rule 4-3(h) to review all rulings decided adversely to Bienemy. However, this fact does not change the conclusion that we are precluded from considering the merits of Bienemy's argument concerning insufficient evidence of accomplice liability. As we stated in *Maxwell v. State*, 373 Ark. 553, 559, 285 S.W.3d 195, 200 (2008):

[T]his court has held in the past that failure to make the motions for directed verdict with specificity regarding the sufficiency issue on

appeal equates to the motion never having been made. *See Tillman v. State*, 364 Ark. 143, 147, 217 S.W.3d 773, 775 (2005); *Webb v. State*, 327 Ark. 51, 60, 938 S.W.2d 806, 811-12 (1997). We hold that this is so even in situations where the motion is specific at the close of all the evidence but not at the close of the State's case. The motion for directed verdict on the issue at hand is simply not preserved. Rule 4-3(h), as a result, does not mandate review of the serious-physical-injury point when the directed-verdict motion has not properly been made. *See Tillman*, 364 Ark. at 147, 217 S.W.3d at 775.

Accordingly, Rule 4-3(h) does not mandate review of Bienemy's claim that there was insufficient evidence that he was an accomplice to Deadmon's murder.

Pursuant to Rule 4-3(h), the record has been examined for all other objections, motions, and requests made by either party that were decided adversely to Bienemy, and no prejudicial error has been found. *Boldin*, 373 Ark. 295, 283 S.W.3d 565.

Affirmed.

GLAZE, J., not participating.