Cite as 2025 Ark. App. 319

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-24-479

|  |  |  |
|---|---|---|
| KEITH LAMONT BING | APPELLANT | Opinion Delivered May 21, 2025<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION [NO. 60CR-21-3809] |
| V. |  |  |
| STATE OF ARKANSAS | APPELLEE | HONORABLE KAREN D. WHATLEY, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Keith Bing was convicted by a Pulaski County jury of one count of aggravated robbery and was sentenced to ten years in the Arkansas Division of Correction. He appeals that conviction, alleging there was insufficient evidence to support his conviction; that is, there was insufficient evidence that he committed a theft or acted with the purpose of committing theft as is required for an aggravated-robbery conviction. We affirm.

In October 2021, Bing was charged with one count of aggravated robbery, a Class Y felony; one count of theft of property, a Class B felony; and one count of possession of a controlled substance (marijuana) with purpose to deliver, a Class A misdemeanor. These charges arose out of his arrest for an altercation he had with Roy Thomas Dobbins on August 9, 2021. The State also sought a sentencing enhancement for the employment of a firearm

during the commission of the crime. The State later nolle prossed the drug charge, and Bing was tried on the remaining counts.

A jury trial was held on December 13, 2023. The State presented three witnesses: Angela Bauman and investigating officers Sam Cooper and Peyton Looper with the North Little Rock Police Department. Dobbins did not testify.

The altercation between Bing and Dobbins occurred at the Superstop gas station in North Little Rock. Bauman, an attendant there, testified that she was working when Bing and Dobbins began to argue. After her requests for peace were ignored, she ushered the customers out of the store, went outside, and flagged down a police officer who was nearby. When asked on cross-examination, she testified that Bing was a regular in the store and had never caused any problems. She denied seeing a handgun and did not see anything to indicate that Bing was robbing Dobbins.

A surveillance video of the altercation was then played for the jury. The video shows the interaction between Bing and Dobbins. Bing can be seen pulling a pistol out of his crossbody bag, racking the slide, and putting it behind his back. The argument between the two appears to get even more heated, with Bing getting in Dobbins's face. Dobbins turns his back, and Bing pistol-whips Dobbins and puts the gun in his face. Bing becomes more agitated, and he points his finger in Dobbins's face; Dobbins does not react. A short time later, Bing acts as though he is going to hit Dobbins in the face with the gun. Dobbins flinches and takes a couple of steps back. Dobbins is then seen taking money out of his pocket. Bing grabs it from Dobbins's hand, throws it onto the floor, and once again points

the gun at Dobbins's face. Dobbins is seen talking to Bing calmly and swatting the gun away. Bing then picks up something from the floor. After that, he rifles through Dobbins's pockets and throws what he finds on the ground. Before he leaves the store, Bing can be seen picking something else up off the ground. He then places his pistol near the front register and exits the store.

Officer Cooper testified that he was on patrol when Bauman flagged him down. When he stopped, Bauman told him that two men were fighting in the convenience store and that a handgun was involved.

He testified that he encountered Bing and Dobbins when they exited the front of the convenience store. The two men were still arguing, and Dobbins was holding his hand to the back of his head. Officer Cooper remarked that he was told that a threat had been made before the altercation ensued.

Officer Cooper later retrieved a handgun from behind the clerk's counter. He searched Bing and found an extended magazine along with ammunition matching the caliber of weapon found in the convenience store. He handed the firearm and ammunition to Officer Looper to place into evidence. He then arrested Bing for aggravated robbery. He stated that Bing never tried to leave and that he cooperated with the police, although he was argumentative at times and originally denied, then admitted, having a handgun.

Officer Looper testified that she responded to the incident at the Superstop and took possession of the evidence—the handgun, magazine, and ammunition. Those items, including thirty-five 9mm bullets, were admitted into evidence.

At the close of the State's case, Bing moved for a directed verdict. As to the aggravated-robbery charge, Bing argued that the State failed to admit any evidence that he had committed a theft. More specifically, he argued:

> Without calling the victim in this case, no one has testified that it was Mr. Bing's purpose to commit a theft. The element of aggravated robbery includes that, if a person deploys a weapon or other serious form – or uses other forms of serious force to commit, with the purpose of committing a theft. There has been no evidence introduced that there was a purpose of committing the theft, as to [aggravated robbery].

> In addition, the theft element requires that someone either took or intended to take an item from a victim or exercise control or attempt to exercise control, to deprive that person of some sort of property, that they have either some sort of interest in a property, and there's been no testimony of that.

> As a matter of fact, there's just been no evidence for this jury to consider that would move this jury beyond speculation and conjecture as to what occurred in this video, other than this is a video of an altercation that occurred inside a convenience store and a weapon was involved.

> So for that – for those purposes, as to [aggravated robbery], I would ask this Court to direct the verdict and enter a judgment of acquittal.

In response, the State argued that it was required to show only an intent to commit a theft; it did not have to show that a theft was actually completed. The State claimed that intent could be inferred by watching the video and by seeing the conduct, and the jury, by watching Bing's actions and conduct, could infer "with some clarity" what his intent was.

The court denied the motion, and the defense presented its case.[1]

---

[1]Bing also presented surveillance video of his interactions with Dobbins before the altercation.

Bing testified that he was at the convenience store almost every day and knows the people in the store. He also knows Dobbins from the neighborhood. He testified that Dobbins has a reputation for being a dangerous person and that Dobbins had once shot his own brother. Bing, on the other hand, has no criminal history and no prior felony convictions.

Bing testified that, on the day of the altercation, he entered the convenience store and greeted the people there—shaking hands, fist-bumping, and talking to them. As he was walking to the rear of the store to get something to drink, he noticed Dobbins by the drinking fountain. He approached Dobbins, and they spoke. Neither had an issue with the other at this point.

Bing then asked Dobbins about some money that Bing had given him approximately six months earlier. He stated that Dobbins had been gambling and needed some money for his family, so Bing had given him eighty dollars. Dobbins had offered to give him some clothes in return.[2] The day of the altercation, however, Dobbins denied he owed Bing any clothing. That is when the argument began.

Bing claimed that Dobbins told him to stop asking about the clothing and threatened to shoot him "like he had his brother." Bing stated he believed Dobbins was serious in his

---

[2]Bing testified that Dobbins made money selling clothing and that Bing had purchased clothing from him in the past.

threats. When Dobbins threatened him, Bing pulled out his weapon.[3] Bing further testified that he believed Dobbins was armed because he had never seen Dobbins without a weapon. He admitted that Dobbins never produced a weapon and that Dobbins's back was turned when Bing attempted to hit him.[4]

When asked, Bing insisted he could not have walked out the door because he was scared, claiming a "fight or flight" reaction. He also noted that Dobbins's car was right outside the store. Although Bing testified that he was terrified because Dobbins had threatened to kill him, the video shows Bing point his finger in Dobbins's face and jump at him, causing Dobbins to flinch. Bing testified that he was just trying to scare him.

Bing testified that at that point, the two men were just arguing. When Dobbins tried to hand Bing money, Bing slapped it away because he believed Dobbins was trying to set him up. Bing insisted that he had not asked him for any money. He stated that, in the video when he was seen rifling through Dobbins's pockets, he was searching for Dobbins's weapon. He denied that he placed a bullet in the chamber of his gun or that he could be seen doing so on the surveillance video. He claimed he tried to do so but couldn't because the safety was

---

[3]Bing testified that he was taught in a firearms class that if somebody makes you feel threatened, you should pull your gun out. He later stated on cross-examination that he was taught in his concealed-handgun class not to draw his weapon unless he was prepared to use it.

[4]He later clarified that Dobbins was turned sideways at an angle to him.

on. He further denied picking up money from the ground; instead, he claimed to have picked up ammunition that fell from his fanny pack during the altercation.

As for the gun, Bing stated he has a concealed-carry permit and that the gun was not stolen. He also had a thirty-round clip and loose bullets in his fanny pack. He claimed that he set the gun down when he saw the police because Dobbins was yelling that he had robbed him, and Bing did not want to be approached by a police officer with a gun in his hand. He placed the gun behind the register because he did not want anyone else to get to it.

He testified that he cooperated with police and that he did not flee. He informed officers that it was not a robbery as Dobbins claimed; rather, it was an altercation caused by Dobbins's threat. He asserted he never actually hit Dobbins—that he "missed"—and that Dobbins held his head to appear injured for the officers. He said Dobbins even went back inside the store and bought something after claiming Bing had taken all his money, insinuating that Dobbins was lying.

Lonnie Lucas, the other store clerk on duty that evening, testified that he was behind the counter when the altercation ensued. He said he saw and heard Bing and Dobbins arguing. He did not get the impression that Bing was trying to rob Dobbins or that Bing was trying to take something that did not belong to him. He also testified that he did not hear Dobbins threaten to kill Bing.

After the defense rested, Bing renewed his motions for directed verdict, which were denied. The case was submitted to the jury, which ultimately found Bing guilty of aggravated

7

robbery but not guilty of theft. The jury recommended a sentence of ten years on the aggravated-robbery conviction.

As to the firearm sentencing enhancement, the jury found that Bing employed a firearm as a means of committing the robbery. However, it did not recommend any time be added to his sentence for the enhancement.

Bing filed a timely notice of appeal. On appeal, he argues that there was insufficient evidence to support his aggravated-robbery conviction. More specifically, he argues that none of the State's witnesses provided evidence that he took anything from Dobbins or that he acted with the purpose of taking anything from Dobbins. His argument, however, is without merit since there was sufficient evidence from which the jury could find him guilty of aggravated robbery.

When considering a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Turner v. State*, 2024 Ark. 171, 699 S.W.3d 369. This court will affirm a conviction if there is substantial evidence to support it, meaning the evidence is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.* Substantial evidence can be direct or circumstantial. *Id.* Whether circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide, not this court. *Id.* Likewise, the jury, rather than this court, is responsible for resolving questions concerning the credibility of witnesses. *Id.* In

resolving conflicting testimony and inconsistent evidence, the jury is entitled to believe the State's account of the facts rather than the defendant's version. *Id.*

A person commits aggravated robbery if he commits robbery and is armed with a deadly weapon, represents by word or conduct that he is armed with a deadly weapon, or inflicts or attempts to inflict death or serious physical injury upon another person. Ark. Code Ann. § 5-12-103(a)(1)–(3) (Repl. 2024). A person commits robbery if, "with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person." Ark. Code Ann. § 5-12-102(a) (Repl. 2024).

Here, Bing brandished a weapon while arguing with Dobbins over money and even hit him over the head with it. The video shows him taking money out of Dobbins's hand and throwing it on the ground. He also rifled through Dobbins's pockets and threw their contents on the ground. He was then seen picking some of the things up off the floor. The State asserted it was money, but Bing claimed he was picking up bullets. The jury was not required to believe Bing. *See Turner*, *supra.*

In any event, even if Bing did not actually take anything of value from Dobbins, such a fact is not fatal to his conviction. A conviction of aggravated robbery does not require that a theft actually occur; it requires only that the perpetrator act with the purpose of committing theft. *Butler v. State*, 2011 Ark. App. 708. The focus of aggravated robbery is on the physical force used or threatened, and if the defendant has the intent to commit a theft, no actual transfer of property needs to take place for the offense to be complete. *Id.* The jury heard

9

evidence that there was a dispute over money and saw videos of the confrontation. Having reviewed the evidence, including the surveillance videos, we are persuaded that sufficient evidence exists to support his conviction.

For the foregoing reasons, we affirm.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Jimmy C. Morris, Jr.*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.